AO 241 (Rev. 5/85)



| United States District Court | District    EASTERN | DEC 15 2004 |
|---|---|---|
| Name   MARCELLUS WILLIAMS | Prisoner No.   163729 | Case No.   U. S. DISTRICT COURT EASTERN DISTRICT OF MO |
| Place of Confinement | potosi correctional center | |

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| MARCELLUS WILLIAMS | DON ROPER |

**4 : 04 CV 01749 MLM**

| The Attorney General of the State of: | JERIMIAH JAY NIXON |
|---|---|

## PETITION

1. Name and location of court which entered the judgment of conviction under attack _____
   21st Judicial Circuit, Division 11, Clayton, Missouri 63105

2. Date of judgment of conviction   May 25, 2001

3. Length of sentence   THIRTY (30) years.

4. Nature of offense involved (all counts)   1st.degree robbery, stealing a motor vehicle
   1 count; armed criminal action; two(2) counts of false imprisonment

5. What was your plea? (Check one)
   (a) Not guilty    ☒
   (b) Guilty    ☐
   (c) Nolo contendere    ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details.

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury    ☒
   (b) Judge only    ☐

7. Did you testify at the trial?
   Yes ☒    No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐    No ☐

(2)

9. If you did appeal, answer the following:

(a) Name of court   MISSOURI COURT OF APPEALS, EASTERN DISTRICT

(b) Result   Denied, per curiam order.

(c) Date of result and citation, if known   April 23, 2002

(d) Grounds raised _____

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court   Missouri Supreme Court, application for transfer.

(2) Result   Denied Transfer, on June 10, 2002

_____

(3) Date of result and citation, if known   June 10, 2002

(4) Grounds raised _____

_____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____ N/A _____

(2) Result _____ " _____

(3) Date of result and citation, if known   _____

(4) Grounds raised _____ N/A _____

_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒        No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court   Circuit Court, 21st Judicial Circuit.

(2) Nature of proceeding   29.15 postconviction proceeding.

_____

(3) Grounds raised _____ *SEE ATTACHMENT* _____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐     No ☒

(5) Result   29.15 Amended Motion denied

(6) Date of result   July 22, 2003

(b) As to any second petition, application or motion give the same information:

(1) Name of court   Missouri Court of Appeals, Eastern District

(2) Nature of proceeding   29.15 postconviction appeal.

(3) Grounds raised        *SEE ATTACHMENT*

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐     No ☒

(5) Result   Denied, Mandate issued on June 18, 2004

(6) Date of result   June 18, 2004

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.          Yes ☒     No ☐
(2) Second petition, etc.       Yes ☒     No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:
                                    N/A

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting the same.
   Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self–incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.  Ground one: _____ **\*SEE ATTACHMENTS\*** _____

_____ " _____

Supporting FACTS (state *briefly* without citing cases or law) _____

**\*SEE ATTACHMENTS\***

_____ " _____

_____

_____

_____

_____

_____ " _____

B.  Ground two: _____ " _____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ " _____

_____ " _____

_____

_____

_____

_____

C.     Ground three: _____ **\*SEE ATTACHMENTS\*** _____
"

Supporting FACTS (state *briefly* without citing cases or law) _____
**\*SEE ATTACHMENTS\***
"
"
"

D.     Ground four: _____
"
"

Supporting FACTS (state *briefly* without citing cases or law) _____
"
"

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____
N/A
"

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐      No ☒

15.   Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)     At preliminary hearing _____
N/A
"

(b)     At arraignment and plea _____ John Krehmeyer,
100 South Central Avenue, Second fl, Clayton, Mo.63105

**GROUND ONE: PROSECUTORIAL MISCONDUCT.**

**FACTS:** Petitioner's conviction and sentence was obtained through the use of prosecutorial misconduct, in violation of petitioner's right under the 14th Amendment to the United States Constitution. Whereas, the state's attorney misled the jury by misleading and falsely arguing to the jury that petitioner's running from police in the City of St.Louis, was evidence of "consciousness of guilt" of the robbery committed at Burger King, in Brentwood,MO., although the prosecutor (Mark Bishop) knew at all times knew that petitioner was running in the City of St.Louis over thirty (30) days after the Brentwood robbery was committed, and the prosecutor knew that petitioner was in fact running from the City police in connection of a total different robbery of a doughnut shop in downtown St.Louis. (TT:287,Supp.TT:2-4). However, this knowledge did not stop the prosecutor in his thirst and quest to secure a conviction at al cost... This prosecutor listed "Ran from police officers" as one of his factors during closing before the jury attempting to prove petitioner's guilt of the Burger King robbery in Brentwood. (TT:386,387). As a direct result of the prosecutor's misconduct petitioner is suffering an unlawful restraint on his liberty.

**GROUND TWO: INEFFECTIVE ASST.OF APPELLANT COUNSEL.**

**FACTS:** Petitioner suffered ineffective assistance of direct-appeal counsel when said counsel failed to raise on direct appeal the claim that the prosecutor misled the jury into believing that petitioner fled from the police after allegedly committing the Burger King robbery mentioned and as out-lined in the above ground. The prosecutor misled the jury by arguing that petitioner's running from police at another time and in another place was evidence of consciousness of guilt of robbery for which he was on trial. Although trial counsel failed to object to the prosecutor's use of "flight"

pg.6a

from one place at one time as "evidence" of anything relating to another place and time, direct-appeal counsel should have sought "plain error" review. Direct appeal counsel should have known as any other similar skilled attorney would have known that a prosecutor **can not** argue that an accused citizen ran from one crime scene when the testimony, evidence would only support the proposition that petitioner ran from another, and because the latter conduct violated the Due Process Clause. Although direct-appeal counsel (Emmitt Queener) did raise a point that the testimony about the St.Louis City doughnut shop robbery was evidence of "other crimes", and such grievance is therefore preserved for independent judicial review. This present grievance deals with **"argument"** rather than evidence, insofar as the prosecutor suggested that petitioner ran from police in **this** (Brentwood robbery) case. Because of direct-appeal counsel's ineffectiveness petitioner did not even have the dubious benefit of "plain error" review. Furhtermore, when direct-appeal counsel raised the parallel point concerning the same prosecutorial misconduct attacking the presentment of evidence as evidence of "other crimes", the ground here was also clear from the record and available to direct-appeal counsel to be tagged under **argument**, thus running parallel and enhancing the other crimes point. Petitioner's right to effective assistance of counsel under the Due Process Clause was violated and disregarded by direct-appeal counsel's failure to perform under the standard of reasonableness as dictated by Supreme Court precedent under **Strickland v. Washington,** 466 U.S. 668, 104 S.Ct. 2052 (1984). In addition, petitioner suffered prejudice by herein mentioned counsel's failure to brief a meritorious point that was clear from the record which also denied petitioner of appellate review under plain error. And but for direct-appeal's counsel's deficient performance and omissions there is a reasonable

pg.6b

possibility that the outcome of the proceedings on Direct Review would have been different.

GROUND THREE: INEFFECTIVE ASST.OF TRIAL COUNSEL.

FACTS: Petitioner is suffering an unlawful restraint on his liberty and is in prison in violation of the U.S. Constitution due to petitioner's trial counsel ineffectiveness, which rendered petitioner's trial fundamentally unfair. Whereas, when trial counsel (Elizabeth Haines) failed to object to the state's attorney use of flight from one place at one time as evidence of anything relating to another place and time. The facts of which have been clearly laid out in the two (2) previously presented above. Trial counsel's failure to object to the prosecutor's argument that knowingly presented the jury with false and unconstitutional argument, and inferences fell far below the standard of reasonableness as dictated by Supreme Court precedent under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052. At trial counsel objected that the prosecutor's use of witnesses from petitioner's city robbery under cause no.981-3157, was "evidence of other crimes" (TT:291). Trial counsel recognized that it would be "disingenuous" for the State to say that petitioner's flight was connected to the robbery for which he was standing trial (TT:290), because trial counsel knew that it would be a violation of petitioner's sixth and fourteenth amendment rights under the U.S. Const., and prosecutorial misconduct for the prosecutor to argue and use flight from one place and time as evidence of anything relating to another place and time when trial counsel stated:

> MS.HAINES: Judge it's not flight in connection with this robbery that happened to the State. It's disingenuous to say that that is what the State is using the flight as.

THE COURT: Why is it?

MS.HAINSE: Because it's in a different location at a different time and it happened in connection with another incident. (emphasis added). (TT:290-lines 12-19).

Although trial counsel recognized this grievance, she failed to construct her objection against the prosecutor's "argument", and false inferences. In Burns v. Gammon, 260 F.3rd 892, 895-98 (8thCir.2001), the United States Court of Appeals for the Eighth Circuit reversed a District Court's denial of relief on a prosecutorial misconduct claim analogous to this one. Trial counsel failed to object when the prosecutor asserted that the petitioner had forced the complaining witness in an attempted rape and first-degree assault case to relive trauma of the original incident by exercising his right to have a trial. As the prosecutor knew as well as anyone, that the petitioner had tried to engage in plea negotiations, but the prosecutor's office both spurned the petitioner's acceptance of responsibility and subpoenaed the complaining witness. Burns v. Gammon, 173 F.3d 1089, 1095-96 (8th Cir.2000)(Burns I). Because the petitioner had no prior convictions, the jury assessed and declared punishment as well as making the guilt determination. Because trial counsel failed to object to the prosecutor's comment on the petitioner's assertion of a federally protected constitutional right, he only received plain error review on direct appeal. State v. Burns, 759 S.W.2d 288, 294 (MO.Ct.App.W.D.1988); Burns I-173 F.3d at 1096. Although the Eighth Circuit had not found the prosecutor's remarks to be "plain error", Burns I,173 F.3d at 1095-96, it held it to be ineffective assistance of counsel for trial counsel to have failed to object, which failure denied the petitioner the right to plenary appellate review in the State courts and federal habeas corpus free from "procedural default." In petitioner's

pg.6d

case, not only did trial counsel fail to object to the prosecutor's misleading and prejudicial argument, direct-appeal counsel raised a parallel point concerning the same prosecutorial misconduct, but failed to tag it as such. Thus, this petitioner did not even have the benefit of "plain error review." Trial counsel rendered deficient performance which did prejudice this petitioner when trial counsel failed to object to the prosecutor's false and misleading argument presented herein this ground. The jury retired to deliberate with a false belief, inferences that petitioner ran from the police in connection to the Burger King robbery-when this was not true! Thus, denying petitioner a fair trial and effective assistance of counsel as embodied under the Sixth Amendment of the United States Constitution.

GROUND FOUR: INEFFECTIVE ASST.OF APPELLATE COUNSEL.

FACTS: Petitioner was denied effective assistance of appellate counsel, and is suffering a unlawful restraint on his liberty due to direct-appeal counsel's deficient performance that fell far below the standard of reasonableness as dictated by Supreme Court precedent under **Strickland v. Washington,** petitioner was duly prejudiced by said counsel's failure to brief an independent violation of the Due Process Clause of the Fourteenth Amendment, in that the prosecutor first obtained before the jury was selected, an order in limine precluding defense counsel from adducing several categories of impeachment evidence of its key witness (Laura Asaro), then argued to the jury that the defense had not adduced evidence attacking Asaro's credibility and vouched for her credibility after already obtaining a court order preventing the defense from adducing powerful evidence of her incentive to lie. Whereas, the prosecutor moved to have the following potential impeachment evidence barred:

1.) The number of arrests of municipal convictions of Laura Asaro.

2.) Whether Laura Asaro is now, or ever has been a prostitute.

3.) Whether Laura Asaro is now, or ever has been a drug addict.

4.) The number of children of Laura Asaro.

5.) The identity of the fathers of Laura Asaro's children.

6.) That Laura Asaro may have given controlled substances to others. And-

8.) That Laura Asaro may have possessed controlled substances.

However, during the trial the State's attorney argued the following:

MR.BISHOP: This woman has no motive to lie. No motive to lie. None at all. She said she loved this guy.

MS.HAINES: Objection, your Honor. He's vouching for the credibility of the witness.

THE COURT: Overruled.

MR.BISHOP: There is no evidence at all that there is any reason for her to come in here and lie. None. Not even an implication. TT:pg.388.

The prosecutor made this argument before the jury knowing full well that he had already sought and was granted a motion of limine precluding various pieces of impeachment evidence as to Laura Asaro's character and ability to tell the truth. The State's attorney knew at all times that Asaro was a drug addict; a prostitute; and an unfit mother who has six (6) children by three (3) different fathers, and none of the children are in Asaro's custody due to her corrupt life-style. In addition, the prosecutor (Mark Bishop) knew that this very same witness (Asaro) had plenty of motive to come in the court room and lie before the jury, cause the prosecutor knew

that Laura Asaro, was also to be a witness in a pending murder trial that petitioner had waiting after his robbery trial, and that Asaro was expecting to receive part of a $10,000 reward for her testimony in aforementioned murder trial in which the State was seeking the death penalty. Direct-appeal counsel failed to raise this violation of prosecutorial misconduct although he (Emmett Queener) was the appellate-attorney who litigated and won a reversal on the same grievance, issue presented herein this ground under a previous appeal. **State v. Weiss,** 24 S.W.3d 198 (MO.Ct.App.W.D.2000). **State v. Weiss,** was announced on May 2,2000, and the Missouri Supreme Court denied transfer on August 29,2000. Petitioner's trial did not begin until April 3,2001, well after the publication of this opinion. (TT:154-63). Weiss holds that the prosecutor cannot have certain evidence excluded, and then argue it does not exist. 24 S.W.3d at 202-04. Furthermore, the prosecutor also unlawfully and unconstitutionally commented on petitioner's right to remain silent, in that the prosecutor knew that only the petitioner could have produced evidence in his own behalf that would have countered the prosecutor's comment of **"no evidence"** or **"motive"** for Asaro to come in the court room and lie. This was an attack on petitioner's right to remain silent. In Weiss, the Missouri Court of Appeals-Western District, speaking through the HON.LAURA DENVIR STITH-- now a member of the Missouri Supreme Court-- found that it was **"plain error"** for another prosecutor to make this dishonest argument, and reversed solely on this point even though trial counsel had not objected. That court cited precedent in support of its ruling, showing that its decision was not novel or unusual, but a necessary rule to prevent individual public employees from as here, perverting the power of the State to satisfy their private hatreds and ambitions. **Smith v. Groose,** 205 F.3d 1045 (8th Cir.2000). Petitioner alleges that there was

no way for him to get a fair trial under this prosecutor (Mark Bishop), as the very prosecutor had already deemed petitioner guilty of a pending murder case, but petitioner had not at that time been found guilty by a jury of his peers. **(See Attachment X).** Direct-appeal counsel as stated above won the **Weiss** case, and thus was very familiar with the case. He also knew the appellate court had granted relief under the plain-error standard, meaning that failure to preserve the point in the trial court was not necessarily fatal to it on appeal. Appellate counsel's failure to invoke the power & authority under Weiss, in petitioner's instance was respectfully deficient performance within the meaning of **Strickland v. Washington,** and its pogeny. Petitioner suffered prejudice in that there was a reasonable probability that but for this omission, the Missouri Court of Appeals-Eastern District, would have recognized the applicability of Weiss and the cases it cites and the result of petitioner's direct-appeal would have been different. Although such a finding is sufficient to satisfy the prejudice prong as a matter of federal constitutional law, i.e., the "supreme law of the land", U.S. Const. art.VI, this claim would also have required reversal had it been asserted and was so obvious from the record that a competent and effective lawyer (especially the one who won Weiss) would have recognized it and asserted it.

GROUND FIVE: INEFFECTIVE ASST.OF APPELLANT COUNSEL.

FACTS: Petitioner is suffering an unlawful restraint of his liberty, and was denied his right to competent and effective assistance of counsel during the direct-appeal stage when direct-appeal counsel failed to adequately and sufficiently brief the point that the trial court erred and abused its discretion in overruling petitioner's motion for a continuance, or in the alternative to exclude Laura Asaro's testimony at trial. Direct-appeal counsel's failure to include in the first point on appeal reasons (a)-through-(h), which were presented and preserved for appellate review by trial counsel in the motion for new trial, and only choosing to brief one (1) of the nine (9) preserved reasons why a continuance should have been granted or in the alternative exclude Laura Asaro as a state's witness diminished the impact of the grievance, and the trial court's abuse of discretion, but also denied petitioner of his right to due process and effective assistance of counsel. Whereas, petitioner's trial counsel (Elizabeth Haines) on April 2,2001 filed with the trial court a motion entitled: "Defendant's Motion To Compel Production of Discoverable Material and For A Continuance For Purposes of Further Investigation Based Upon Newly Discoverable Evidence, Or In The ALternative Defendant's Motion To Strike A States Witness For Prosecutorial Misconduc"t (See Attachment). Within this motion, trial counsel effectively set-forth in detail proper and lawful reasons why the trial court should grant petitioner a continuance, or in the alternative strike Laura Asaro as a state's witness. Due to the state's direct interference trial counsel was not able to despose Laura Asaro until the Friday prior to the trial beginning on Monday, March 30,2001. At the

deposition Asaro under oath testified to details not previously provided by the state in any discovery. (See above-mentioned attachment, at pg.129, & petitioner's Motion For A New Trial, attached hereto). Each item of newly discovered evidence revealed by Asaro was not previously disclosed to the defense/petitioner in any police report or summary from the prosecuting attorney's office despite the fact that Keith Larner and Mark Bishop both assistant prosecuting attorneys had personally interviewed Asaro at the very least three (3) times prior to her deposition and discussed the facts of the case with her, and according to Asaro had each taken notes of the interviews. (Supp.LF-pg 31-39). Due to, and because of the state's interference and failure to disclose evidence-proper investigation was not completed by trial counsel prior to trial, which includes contacting innumerable witnesses and obtaining rebuttal evidence with regards to the newly discovered evidence Asaro revealed in her deposition on March 30,2001. With regards to the facts presented herein this ground five (5), so far fell far below the standard of reasonableness under Strickland, when direct-appeal counsel briefed only reason (i) presented in the Motion For A New Trial, as his first point in the direct-appeal brief. The exclusion of reasons (a)-through-(h) of direct-appeal counsel's first point on appeal did duly prejudice petitioner before the Missouri Court of Appeals-Eastern District, as it diminished the trial court error presented in the motion for a new trial, it also denied petitioner his right to effective assistance of counsel as well as denied the reviewing court of a proper set of facts for plenary review on direct-appeal with regards to the point presented by direct-appeal counsel. In addition, direct-appeal counsel's omission cannot be considered a tactical choice, as counsel (Emmett Queener) ignored

and did not obtain all the facts needed to support his omissions of reasons (a)-through-(h) mentioned above. In fact, this petitioner through correspondence to direct-appeal counsel, and counsel's own reply is instructive and very revealing as to the deficientness of counsel's representation, professional judgment and reasonableness, (See Attachments 1, 1a, 1b, and 1c). Whereas, from Mr.Queener's own reply letter (1b) dated February 22,2002, ineffectiveness, deficient performance and lack of professional judgment can be seen in that counsel stated that it was his "professional judgment" that the only issue properly before the trial court for review on appeal was the one issue that trial attorney argued prior to the trial- (i.e., the denial of the opportunity to investigate Asaro's mental status and mental health records). However, when petitioner directed direct-appeal counsel's attention to the fact that counsel's "professional judgment" was not supported by the record (See attachment 1c), and was not reasonable, direct-appeal counsel did not respond back to petitioner thereafter, nor did Mr.Queener make any attempts to purge or correct his constitutional error of not performing and functioning as petitioner's attorney as dictated and rooted in the Sixth Amendment of the U.S. Constitution. Direct-appeal counsel's failure to present the full evidentiary picture supporting his first point on appeal was not the product of "strategic judgment" or even as stated by Mr.Queener "professional judgment", but was incompentency and deficient performance in the reading of the trial transcript and legal file. On the basis of direct-appeal counsel's submission of only one reason out of nine, only allowed the Missouri Court of Appeals-Eastern District to issue a per curiam opinion in which relief

pg.k

was denied. There is a reasonable probability that but for the artificial, and erroneous limitation of the record on the part of direct-appeal counsel, the result of the proceeding would have been different. In addition, had trial counsel's first point of the Motion For A New Trial been properly asserted by direct-appeal counsel, (i.e., by adducing all of the factual grounds for the continuance or in the alternative, the preclusion) the point would have required a reversal, as said point was so obvious from the record, by just simply reading the transcript and legal file, that a competent and effective lawyer would have recognized it and asserted it.

**GROUND SIX: INEFFECTIVE ASST.TRIAL COUNSEL**

**FACTS:** Trial counsel (Elizabeth Haines) rendered petitioner ineffective assistance in her representation, which did in fact prejudice petitioner when counsel failed to locate, subpoena and depose Laura Asaro before catching her with the prosecution on March 29,2001, two (2) business days before trial in violation of petitioner's right to effective assistance of counsel as guaranteed by the United States Constitution, thereunder the 6th and 14th amendments. In support of petitioner's grievance, assertion, petitioner asserts that Mark Bishop, the assistant prosecuting attorney was telling the **truth** to the motion court when he said:

> "And just as an aside your Honor, we were in chambers a few weeks ago and you indicated to me if I had a better address on Ms.Asaro, you wanted me to give it to defense counsel. I found out that she was still in custody in the city jail and I dont really consider that a better address. It's not really a residence. But the day I found out her being in that city jail I notified defense counsel in writing that day she was in the city jail. They could have served her that day, and that was weeks ago, but they failed to do that, and I have yet to hear a reason why. I dont know if she was too busy or whatever, bur she was in custody at that time and they knew about it." (TT:6-17).

In keeping with the above assertion that the state's attorney is making concerning the truth about counsel's ability to have been able to contact and depose Asaro weeks before trial it can be easily ascertained that

pg.6m

petitioner was prejudiced by trial counsel's lack of due diligence in contacting, deposing and then investigating the testimony, information, evidence that Laura Asaro revealed for the first time during her deposition that was not never revealed before hand, and mentioned in the above presented ground five,(i.e. items **(a)-through-(i)**). But for trial counsel's omission to find Asaro earlier and investigate items (a)-through-(i), there is a reasonable probability that the outcome of the proceedings would have been different. It was critical that trial counsel exerted due diligence in contacting, deposing and investigate Laura Asaro **prior to** catching her with the prosecution on March 29,2001, two (2) business days before trial. Trial counsel had ample time to prepare, which includes a proper amount of time to investigate Asaro for impeachment purposes. Here in particular, impeachment of the key prosecution witness would have created a reasonable probability of a different outcome. Furthermore, there is a reasonable probability that had trial counsel contacted, deposed and investigated Asaro and her newly disclosed information, trial counsel would have had the legal, and proper ammunition to have Asaro excluded as a state's witness, which would have destroyed the state's case. This was far from a lead-pipe cinch case. No one at Burger King identified the perpetrator the prosecution said was petitioner.*

---

*In closing, the prosecutor claimed that Sean Merriman, the manager of the Burger King, identified the petitioner as one of the robbers, (TT:385-86). The attenuated argument must be heavily discounted by Mr.Merriman's sworn testimony that though he knew petitioner, he did not know whether petitioner was one of the robbers. (TT:221-22) Emphasis added.

pg.6n

Only Laura Asaro, who wasn't there, told the jury it was petitioner. She was at the beck and call of the prosecution. The additional grounds for impeachment were important enough to have made a difference to a reasonable jury. At least one could not say so without having weighed trial counsel's testimony about what she would have done if the prosecution **had not hidden** Asaro from the defense*, and if the trial judge had not denied her motion for continuance to follow up on the leads she learned about for the first time, the Friday before trial.

Wherefore, petitioner was denied effective assistance of counsel as defined by **Strickland v. Washington.** Moreover, petitioner was also prejudiced by trial counsel's failure to locate Asaro, investigate the newly revealed information/evidence revealed under items (a)-through-(i), presented in the above **ground five,** and deploy lines of impeachment discovered in her deposition, in violation of petitioner's sixth and fourteenth amendment rights.

---

*Petitioner does not accept the state's side of the story concerning it not having hidden Asaro and almost having succeeded in denying the defense any contact at all with her before her appearance as its star witness at trial itself, as presented herein under ground five (5), and that can be gathered from the state's own attorney remarks to the trial court, when same stated incredulously, maliciously in pertinent part, regarding the whereabouts of Asaro, and the notification to defense counsel of same whereabouts:

> "But the day I found out her being in that city jail I notified defense counsel **in writing that day she was in the city jail.** They could have served her **that day,** and that was weeks ago." TT:6-17) (Emphasis added).

Petitioner asserts that what is so incredible and at the same time malicious in the above prosecutor's remarks is the fact that he doesn't realize that its impossible to depose his witness the same day he notifies defense counsel **by mail** of said witness whereabouts...

But the state has contended before the trial/motion court, and the Missouri Court of Appeals-Eastern District, that trial counsel could have contacted Asaro earlier. (See attachment z, pg(s) 126-129). So petitioner argues that his counsel was ineffective for failing to locate, depose Asaro, and investigate her for impeachmen/exclusion purposes within the ample amount of time she had to prepare prior to trial. This stops the state from having it both ways: either what it said was false and a misrepresentation to two (2) courts, or trial counsel could have contacted Asaro **before** March 29,2001. Either the local prosecutors hid the ball, or trial counsel failed to run with it. If the states agents did not misrepresent material facts to the Missouri Court of Appeals-Eastern District, and the trial/motion court, then trial counsel could have contacted Asaro, and had her served with a deposition subpoena from February 2001, forward. **Therefore, respondent is estopped to deny that trial counsel's performance and representation of petitioner was professionally deficient. Smith v. Groose,** 205 F.3d 1045,1049-50 (8th Cir.2000).

## GROUND SEVEN: INEFFECTIVE ASST.OF TRIAL COUNSEL

**FACTS:** Petitioner's trial counsel rendered ineffective assistance in representing petitioner during trial when said trial attorney failed to raise a contemporaneous objection to the fact that the prosecutor first obtained, before the jury was selected, an order in limine precluding trial counsel from adducing several categories of impeachment evidence of Laura Asaro (TT:30), then argued to the jury that the defense had not adduced evidence attacking her credibility (TT:388). Trial counsel's failure to perform as any other competent attorney would have done did in fact prejudice petitioner and violated petitioner's right to effective assistance of counsel guaranteed in U.S.Const., amendments VI & XIV. In addition, counsel's failure denied petitioner a full and fair opportunity to litigate his federal constitutional grievances in the state courts, which the State of Missouri bound itself to provide, as a procedural protection of the rights of the accused-an independent violation of the Due Process Clause of the Fourteenth Amendment-in that, although trial counsel objected to the vouching and included parts of this grievance in the motion for new trial, she did not raise a contemporaneous objection to the prosecutor's strategy to mislead the jury into thinking a person he knew to be a crack-whore, an unfit mother, and one of his key witnesses who was seeking a monetary reward for testimony against petitioner in a pending death penalty case, was entitled to have what she said credited on par with the testimony of an ordinary citizen. Furthermore, this omission on the part of trial counsel had the effect that if direct-appeal counsel had raised this grievance on appeal, he would had done so for "plain error" review. Although petitioner believes direct-appeal

pg.6q

counsel should have done so (**see ground four**), trial counsel's omission to preserve this specific grievance is the underlying claim of ineffective assistance of counsel relating to the prosecutor's choice of this tactic to deny petitioner a fair trial, and but for trial counsel's deficient performance the outcome of the trial would have been different. Although respondent might assume that the trial court would have overruled a **Weiss**\* objection even if trial counsel had made it. But a person raising a claim of ineffective assistance of counsel is entitled to have prejudice assessed on the basis of how an objectively reasonable decisionmaker would have reacted to what trial counsel ought to have done. **Brown v. Luebbers,** 344 F.3d 770 (8th Cir.2003). Whereas, in **Brown v. Luebbers,** a state trial judge excluded a letter in mitigation from the accused citizen's brother. The panel held that this exclusion violated the constitutional rules the Supreme Court had mandated for presentation of information to the jury in penalty phase of a capital case. In assessing the prejudice flowing from the state trial judge's exclusion of the letter, the panel took into account the state trial judge's speeches from the bench lauding the troops in the then-ongoing Operation Desert Shield, which the trial judge had made before he learned that the accused citizen's brother was a sergeant among them. In a petition for rehearing, the Missouri State Attorney General's Office argued that the panel had erred in taking this fact into account in assessing the

---

\*24 S.W.3d 198, 202-04 (Mo.Ct.App.W.D.2000).

pg.6r

prejudice. It quoted language from **Strickland**, 466 U.S. at 695, to the effect that an accused citizen is not entitled a windfall on account of a "lawless decisionmaker," but that "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker..." In this instance petitioner is entitled to have prejudice weighed on the assumption that the trial court would have ruled correctly on a timely request for relief.

pg.6s

**GROUND EIGHT: INEFFECTIVE ASST.OF TRIAL COUNSEL**

**FACTS:** Petitioner is suffering an unlawful restraint on his liberty, as a direct result of trial counsel (Elizabeth Haines) rendering ineffective assistance, and deficient performance which did in fact prejudice petitioner when said counsel failed to cause Cynthia Asaro, the mother of the prosecution's chief witness Laura Asaro, and the children of Laura Asaro to be subpoenaed as defense witnesses, in violation of petitioner's right to a fair trial and effective assistance of counsel as guaranteed thereunder the U.S.Constitution Amendments VI & XIV. Whereas, Cynthia Asaro and the children of Laura Asaro would have contradicted Laura Asaro's testimony, and the children would have denied that petitioner ever gave them each any money in the manner of coins (4$-or-5$). Although trial counsel did endorse Ms.Cynthia Asaro as a defense witness, she failed to have Cynthia Asaro subpoena and be present to give testimony. Had trial counsel done such as any other competent attorney in a similar circumstance would have done, Cynthia Asaro would have testified that she was in a key position where she would have observed or otherwise learned about any monentary gifts, charity that would have been given to her grandchildren, **who she had custody over,** and who lived with her, that petitioner would have given them in the form of coins (4$-or-5$ each). Ms.Cynthia Asaro would have testified that petitioner did not give any money in the form of coins to her grandchildren, because it never happened. From the deposition of Laura Asaro, trial counsel was aware of Ms.Cynthia Asaro's opportuniy to know and fully be aware of her grandchildren during the time after the Burger King robbery, and the existence of any money that petitioner would have given them. The production

of Cynthia Asaro at trial to give testimony before the jury would have created reasonable doubt in the minds of one or more of the jurors, and duly exposed Laura's grave unreliability and manifest incentive to fabricate whatever the prosecution wanted her to say. Trial counsel knew that Cynthia Asaro and her grandchildren would have provided a check on Laura Asaro's fabrication. Had petitioner been granted a chance to fully present this grievance to the lower court, and been given an evidentiary hearing, she would have testified that she was available throughout the period of the trial, and that she would have honored a subpoena. Laura Asaro's children would have testified that they were available at their grandmothers' throughout the period of the trial and would have testified if they had been subpoenaed, and if they would have been called as witnesses, they would have testified that they did not receive any money in the manner of coins as their mother testified to against petitioner at trial.

Petitioner suffered prejudice from trial counsel's deficient performance and omission, with regards to the facts presented herein this ground eight, because Cynthia's and the children's testimony would have directly contradicted what Laura Asaro testified to. In fact, if Laura had known that her own mother and children were going to be called as witnesses, she may not have testified for the prosecution, or in the very least testified about the supposed coinage petitioner allegedly gave to her children. Furthermore, absence of this supposed distribution of coinage testimony, or direct contradiction of it by the witness's own mother and of the supposed recipients of the coins themselves, would have had a reasonable probability

pg.6u

of creating a resonable doubt in the mind of at least one juror about the identity of the petitioner as a perpetrator in the robbery. Because Asaro was the prosecution's key witness, and her credibility was subject to attack on several grounds presented to the lower courts, and now presented to this Honorable Court, the effective impeachment of her on the coinage issue had a reasonable probability of leading the jury to throw out the entire rancid stew the prosecution used to serve them.

**GROUND NINE: INEFFECTIVE ASSIST.OF APPELLATE COUNSEL**

**FACTS:** Petitioner is being denied his liberty, and suffering an unlawful restraint on his liberty as a direct result of the deficient performance of direct-appeal counsel when he failed to advance on appeal the ground from the motion for new trial, that the trial court erred in denying the defense motion in limine to preclude purported "business records" from Reebok, purporting to minimize the number of shirts like the one Laura Asaro testified was petitioner's, in violation of petitioner's right to effective assistance of counsel as guaranteed under the United States Constitution, Amendments Sixth & Fourteenth, in that the printouts submitted to the court did not come within the statutory or decisional definition of business records of Reebok but were generated ad hoc at the behest of the local prosecutors. The prosecution introduced a "report" that a clothing manufacturer had prepared at the prosecution's request as a "business record" to make it appear that petitioner was the only person who could have owned a shirt like the one the prosecution held out as the robber's shirt. Although trial counsel preserved the evidentiary objection to this report, direct-appeal counsel did not advance it. No one at the scene of the Burger King

pg.6v

robbery identified petitioner's face as belonging to one of the perpetrators; according to the victims and the surveillance videotape the perpetrators had stockings, pantyhose, or other clothing over their heads, (TT:183,253-54,257). They did, however, describe or record a striped shirt that one of the perpetrators was wearing during the robbery, (TT:253). Through Laura Asaro, the prosecution adduced testimony that petitioner owned such a shirt, (TT:237-39). There was also testimony from a St.Louis police officer that petitioner had a similar shirt in his possession in connection with another robbery, **(see above grounds one, two, three)**. The prosecution tendered a document purporting to show that the manufacturer of the shirt had only distributed one of a given kind of shirt in Missouri at the time of the robbery (TT:247-48), and argued that the fact that this shirt was "very unique" made it more likely that it was the petitioner who was at the scene of the Burger King robbery, (TT:387). Trial counsel raised the issue of the admissibility of this "report" by pretrial motion, contemporaneous objection, and inclusion in the motion for new trial. Direct-appeal counsel did not include it in the brief, even though it would have been eligible for plenary review. Trial counsel's motion in limine (Appendix to State PCR Appellate Brief), demonstrated that the documents did not qualify for admission under Mo.Rev.Stat §§ 490.680 & 490.692, because they are not proper business records. First, the first attached page depicting clothing was not a record kept in the regular course of business and recorded by someone within Reebok with knowledge of the act, event, condition, opinion, or diagnosis recorded. This page was not made at or near the time of the act, even, condition, opinion, or diagnosis as stated in the affidavit. This

pg.6w

page does not fit within the very description noted in the affidavit. The purported record is not a proper business record with a proper foundation, and therefore, constitutes impermissible hearsay which would be excluded in any lawsuit between parties both of whose rights the State of Missouri took seriously, and must also be excluded from a criminal trial as a matter of federal and state constitutional law, **Ohio v. Roberts,** 448 U.S. 56,66 (1980). The second and third pages attached to the McCarthy affidavit appear to be reports created with a computer. The proper elements to the foundation for computer generated matter is set forth in **E.J. IMWINKELREID, CRIMINAL EVIDENTIARY FOUNDATIONS 62-63 (Lexis 1997).** The affidavit supplied in this instance does nothing to satisfy these requirements. There is no explanation of what directive was given, and who gave it, regarding what data the computer was supposed to have read out. There was no one to explain the meaning of the symbols or terms within the documents for the trier of fact. Admission of these reports was done solely to deceive, and mislead the jury, because the prosecutor knew that the shirt in question was not unique, nor was the units limited as **3,450 units could not be accountted for,** (see attached affidavit of John D.Masciarelli, and the business records submitted by him), Furthermore, the admission of these reports violated petitioner's right to confrontation, equal protection, due process, and a fair and impartial jury trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Missouri Constitution art.I,§§ 2,10 & 18(a). There is a reasonable probability that if direct-appeal counsel had presented this grievance to the Appeals Court-especially in the context of other points direct-appeal counsel presented and should have presented-the

pg.6x

result of the proceedings before it would have been different. Although such a finding is sufficient to satisfy **Strickland v. Washington,** 466 U.S. 668, 104 S.Ct. 2052, and therefore establish prejudice as matter of federal constitutional law, i.e., the "supreme law of the land," U.S.Const.art.VI, this point would also have required reversal had it been asserted and was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.

(c) At trial _____ Elizabeth Haines, Esq., 100 S.Central Ave, 2nd Fl, Clayton, Mo.63105

(d) At sentencing _____ Elizabeth Haines, mentioned above.

(e) On appeal _____ Emmett D.Queener, 3402 Buttonwood, Columbia Mo.65201

(f) In any post-conviction proceeding _____ John Simon, Mo.Bar No.34535, PO Box 16005 Clayton, MO.63105

(g) On appeal from any adverse ruling in a post-conviction proceeding _____ John Simon above filed 29.15 pcr appeal brief, then withdrew, then petitioner proceeded pro se.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

Yes ☐     No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☒     No ☐

(a) If so, give name and location of court which imposed sentence to be served in the future: 21st.Judicial Circuit, Div.11,

(b) Give date and length of the above sentence: _____ Death Sentence, and life sentences attached thereto.
August 26/28 2001

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☒     No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

12-7-2004
(date)

_____
Signature of Petitioner