**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MARCELLUS S. WILLIAMS, SR.,    )
                                       )

    Petitioner,               )
                                       )

    v.                        )   Case no. 4:04-CV-1749 MLM
                                       )

DON ROPER,               )
                                       )

    Superintendent.          )

## RESPONSE TO ORDER TO SHOW CAUSE

Comes now respondent, by and through counsel, and prays that this Court deny the petition for writ of habeas corpus.

## I.  Statement of Parties and Custody

Petitioner Marcellus S. Williams, Sr., an inmate in the Potosi Correctional Center (PCC) in Mineral Point, Missouri, was convicted of one count of robbery in the first degree, two counts of false imprisonment, one count of armed criminal action, and one count of stealing a motor vehicle in the Circuit Court of St. Louis County and was sentenced to concurrent terms of thirty years on the robbery count, twenty-five years on the armed criminal action count, one year on each false imprisonment count, and seven years on the motor vehicle count.  These sentences were, however, to be served consecutively to the concurrent twenty-year sentences for robbery and armed criminal action an seven-year sentence for armed

criminal action imposed in St. Louis City case no. 981-3157.  Respondent also notes that petitioner was sentenced, in an unrelated case, of one count of murder in the first degree, one count of robbery in the first degree, one count of burglary in the first degree, and two counts of armed criminal action, for which he was sentenced to death on the murder count, a term of life imprisonment on the robbery count, and thirty years each on the other counts.

Petitioner therefore is challenging only consecutive sentences in this federal habeas action.  Therefore, Missouri Attorney General Jeremiah W. (Jay) Nixon and Donald Roper, PCC superintendent, are the proper party respondents.  28 U.S.C. §2254, Rule 2(b).

## II.  Index of Exhibits

1.  Respondent's Exhibit A is a true and correct copy of the trial transcript.

2.  Respondent's Exhibit B is a true and correct copy of the hearing on petitioner's motion to suppress.

3.  Respondent's Exhibit C is a true and correct copy of the sentencing hearing.

4.  Respondent's Exhibit D is a true and correct copy of the direct appeal legal file.

5.   Respondent's Exhibit E is a true and correct copy of the supplemental direct appeal legal file.

6.   Respondent's Exhibit F is a true and correct copy of petitioner's direct appeal brief.

7.   Respondent's Exhibit G is a true and correct copy of the State's direct appeal brief.

8.   Respondent's Exhibit H is a true and correct copy of petitioner's direct appeal reply brief.

9.   Respondent's Exhibit I is a true and correct copy of the Missouri Court of Appeals' summary order affirming petitioner's convictions and sentences.

10.  Respondent's Exhibit J is a true and correct copy of the post-conviction relief proceeding (PCR) legal file.

11.  Respondent's Exhibit K is a true and correct copy of the supplemental post-conviction relief proceeding (PCR) legal file.

12.  Respondent's Exhibit L is a true and correct copy of petitioner's PCR brief.

13.  Respondent's Exhibit M is a true and correct copy of the State's PCR brief.

### III.  Statement of Claims and Exhaustion

Petitioner raises ten claims for relief.  As respondent understands these claims, they are as follows:

1.  The prosecutor committed professional misconduct by arguing to the jury that petitioner's flight constituted "consciousness of guilt."

2.  Direct appeal counsel was ineffective for failing to argue on direct appeal that the prosecutor committed professional misconduct by arguing to the jury that petitioner's flight constituted "consciousness of guilt."

3.  Trial counsel was ineffective for failing to object to the prosecutor's argument that petitioner's flight constituted "consciousness of guilt."

4.  Direct appeal counsel was ineffective for failing to raise on appeal the issue that, after the prosecution's motion in limine prohibiting petitioner from impeaching Laura Asaro in certain areas was sustained, the prosecution argued that petitioner had not attacked Asaro's credibility.

5.  Direct appeal counsel was ineffective for failing to argue that the trial court abused its discretion in overruling petitioner's motion for a continuance or exclusion of Laura Asaro's testimony at trial.

6.  Trial counsel was ineffective for failing to locate, subpoena, and depose Laura Asaro sooner than two days before trial.

4

7.    Trial counsel was ineffective for failing to object to the prosecution's motion in limine prohibiting petitioner from impeaching Laura Asaro in certain areas.

8.    Trial counsel was ineffective for failing to subpoena Cynthia Asaro and Laura Asaro's children as trial witnesses.

9.    Direct appeal counsel was ineffective for failing to argue that the trial court erred in denying petitioner's motion in limine precluding evidence from Reebok in the form of business records.

These claims are all exhausted as petitioner raised all of these claims on appeal from the denial of his PCR motion.  Claim 1 was raised as Point VI of the PCR appeal.  Resp. Ex. L at 51-52. Claims 2 and 3 were raised and Point VII in the PCR appeal.  Resp. Ex. L at 52-53.  Claim 4 was raised as Point IV of the PCR appeal.  Resp. Ex. L at 48-49.  Claim 5 was raised on PCR appeal as Point I. Resp. Ex. L at 43-44.  Claim 6 was raised in Point III of the PCR appeal.  Resp. Ex. L at  46-47.  Claim 7 was raised as point V of the PCR appeal.  Resp. Ex. L at 49-50.  Claim 8 was raised as Point IX of the PCR appeal.  Resp. Ex. L at 56. Claim 9 was raised as Point VIII in the PCR appeal.  Resp. Ex. L at 54.

## IV.  Why petitioner's claims fail

### A.   Standard of Review

Federal court review of state court decisions is governed by 28 U.S.C. §2254(d).  This statute provides that federal courts may not grant writs of habeas corpus on any claim that was adjudicated on the merits in state court unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  28 U.S.C. §2254(d)(1).  A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 435 (2000).

A decision is based on "an unreasonable application of clearly established federal law" if the state court correctly cites the governing legal principles from the Supreme Court but "unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  This standard is objective, rather than subjective.  *Williams*, 529 U.S. at 409.  An unreasonable application of federal law is different from an incorrect application of federal law.  Id. at 410.  A federal court may not issue the writ simply because it concludes, in its independent judgment, that the state court

6

applied clearly established federal law erroneously or incorrectly. *Id*. at 411. Rather, the application must also be unreasonable. *Id*.

Federal courts also may not grant writs of habeas corpus on any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was based on an unreasonable determination of the facts in the state proceeding. 28 U.S.C. §2254(d)(2). In a proceeding instituted by an application for writ of habeas corpus, a determination of a factual issue made by a state court shall be presumed correct and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

### B. Petitioner's first claim

Petitioner contends that the prosecutor committed professional misconduct by arguing to the jury that petitioner's flight constituted "consciousness of guilt" because petitioner was not running from the Burger King that was robbed but rather from a donut shop that petitioner also had robbed. Petitioner thus is complaining that the prosecutor's closing argument violated his rights under the Fourteenth Amendment.

When considering claims of error in closing argument, the United States Supreme Court has stated that the standard for deciding whether a due process

violation has occurred because of a prosecutor's comments during closing argument is whether the comment "by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeCristoforo, 416 U.S. 637, 642-43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 436-37 (1974); Darden v. Wainwright, 477 U.S. 168, 180-82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

The Missouri Court of Appeals summarily denied this claim. *Williams v. State*, 135 S.W.3d 503, 504 (Mo.App. E.D. 2004). A summary affirmance, however, does not change the AEDPA standard of review. *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001). Respondent cannot find any legal determination of the Supreme Court contradicted by this case, and the facts of this case are not indistinguishable from any case previously considered by the Supreme Court. Thus, the Missouri court's determinations are not contrary to clearly established federal law.

The Missouri court's determination of this issue is not unreasonable. The evidence in petitioner's trial was that the Burger King was robbed by appellant on July 24, 1998, but that petitioner was not captured on that day. Resp. Ex. A at 177-86, 294-97. However, on August 31, 1998, officers saw petitioner wearing the striped shirt that he wore during the robbery of the Burger King, petitioner

fled, and the officers pursued and captured him. Resp. Ex. A at 237-38, 287-93, 294-97, 334. Petitioner successfully excluded evidence that petitioner had robbed a donut shop on that day before he was captured. Resp. Ex. A at 289-293. Petitioner's trial counsel did not object when the prosecutor argued that the evidence of flight was evidence of petitioner's consciousness of guilt. Resp. Ex. A at 386-87.

There were two explanations for petitioner's flight. One, as the prosecutor argued, was that petitioner, wearing the shirt from the Burger King robbery, ran from police because of his guilt in the Burger King robbery. The other, advanced by petitioner, is that he felt guilty because of a separate donut shop robbery. The prosecutor's argument that petitioner demonstrated his guilt for the Burger King robbery through flight was not unfair and did not infect the trial with constitutional error simply because petitioner has an alternate explanation for the flight. The evidence of flight was admissible. *State v. Chapman*, 876 S.W.2d 15,18 (Mo.App. E.D. 1994)("[e]vidence of flight, whether from the scene of the crime or elsewhere, is admissible to show Defendant's consciousness of guilt"). The prosecutor was arguing a reasonable inference from that evidence to the jury. The prosecutor is permitted to argue reasonable inferences from the evidence to the jury. No error occurred in the prosecutor's argument. This claim fails.

### C. The Missouri courts properly stated the governing law relating to ineffective assistance of counsel

All of petitioner's remaining claims challenge the effectiveness of trial counsel and/or direct appeal counsel. The Missouri Court of Appeals summarily denied all of petitioner's claims. *Williams v. State*, 135 S.W.3d 503, 504 (Mo.App. E.D. 2004). A summary affirmance, however, does not change the AEDPA standard of review. *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001). Respondent cannot find any legal determination of the Supreme Court contradicted by this case, and the facts of this case are not indistinguishable from any case previously considered by the Supreme Court. Thus, the Missouri court's determinations are not contrary to clearly established federal law.

Further, the PCR trial court's order denying PCR relief tracked the definition for effective assistance of counsel enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "Movant failed to show that trial counsel [and direct appeal counsel] lacked the case and skill of a reasonably competent lawyer rendering similar services under the existing circumstances and conditions." Resp. Ex. J at 117, ¶¶6-7. The PCR trial court further found that petitioner was not prejudiced. Resp. Ex. J ay 116-17, ¶¶5-6.

10

The State PCR trial court's decision presents an analysis indistinguishable from *Strickland* and thus is not "contrary to" *Strickland.*

As the Missouri court's decision was not contrary to clearly established federal law, petitioner can prevail only if the State courts' decisions were an unreasonable determination of federal law. Petitioner cannot make that showing.

### D.   Petitioner's second  and third claims

Petitioner contends in his second claim that direct appeal counsel was ineffective for failing to argue on direct appeal that the prosecutor committed professional misconduct by arguing to the jury that petitioner's flight constituted "consciousness of guilt." Petitioner's third claim argues that trial counsel was ineffective for failing to object to the prosecutor's argument that petitioner's flight constituted "consciousness of guilt."

The Missouri courts did not unreasonably apply Missouri law in determining these claims. As discussed in section IV.B. of this response, the evidence of flight was admissible under Missouri law and the prosecutor argued to the jury a reasonable inference from that flight: petitioner knew that he had robbed the Burger King. The prosecutor properly argued this point. Thus, any objection to this argument, or any briefing on appeal, would have been meritless. Counsel is

11

not ineffective for failing to make a meritless objection or brief a meritless issue. These claims fail.

### E. Petitioner's fourth and seventh claims

Petitioner's fourth claim contends that direct appeal counsel was ineffective for failing to raise on appeal the issue that, after the prosecution's motion in limine prohibiting petitioner from impeaching Laura Asaro in certain areas was sustained, the prosecution argued that petitioner had not attacked Asaro's credibility. Petitioner's seventh claim contends that trial counsel was ineffective for failing to object to the prosecution's motion in limine prohibiting petitioner from impeaching Laura Asaro in certain areas.

The Missouri courts' determination of these claims was not an unreasonable application of Supreme Court precedent. The motion in limine provided that petitioner could not inquire into the following areas:

1. The number of arrests or municipal convictions of Laura Asar[o]

2. Whether Laura Asar[o] is now, or ever has been, a prostitute.

3. Whether Laura Asar[o] is now, or ever has been, a drug addict.

4. The number of children of Laura Asar[o].

5. The identity of the father(s) of Laura Asar[o]'s children.

6. That Laura Asar[o] is unemployed.

12

7.  That Laura Asar[o] may have given controlled substance to others.

8.  That Laura Asar[o] may have possessed controlled substances.

Resp. Ex. J at 109. The prosecutor's closing argument reflected only that Asaro had no reason to lie. Resp. Ex. A at 388.

Respondent first notes that some of this evidence was admitted at trial. Petitioner adduced evidence of Asaro's drug use and of the number of children that she had with different people. Resp. Ex. A at 240-41, 243-45. Further, evidence relating to Asaro's employment status, her drug addiction, prostitution, and municipal arrests and convictions does not have any bearing on her desire, or lack thereof, to tell the truth and was thus irrelevant and inadmissable. *See* Fed.R.Evid. 403(a).

None of the excluded inadmissible evidence goes to show the Laura Asaro was lying or had a motive to lie. While the excluded evidence might show that Laura Asaro was not a saint, it does not show that she was lying and petitioner could not have used this evidence to show that Asaro was lying or had a motive to lie. Petitioner was thus not prejudiced by direct appeal counsel's decision not to raise this claim or trial counsel's decision not to object to the motion in limine. This claim therefore fails.

### F.   Petitioner's fifth claim

Petitioner contends that direct appeal counsel was ineffective for failing to argue that the trial court abused its discretion in overruling petitioner's motion for a  continuance or exclusion of Laura Asaro's testimony at trial after the defense deposed Asaro two days prior to trial.  The Missouri courts' determination of this claim was not an unreasonable determination of Supreme Court precedent.

Petitioner points to no steps that petitioner could have taken with a continuance that would have uncovered evidence favorable to petitioner.  In fact, at the time of petitioner's motion for a new trial, which was filed about a month after petitioner's trial, petitioner did not plead that he had been able to find any additional evidence that he was not aware of at the time of his trial based on the Asaro deposition. Resp. Ex. J at 171-172.  Petitioner therefore was and is unable to show any prejudice due to the trial court's denial of a continuance.  Under Missouri law, a petitioner must demonstrate prejudice from the denial of a continuance.  *State v. Schaal,* 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied,* 502 U.S. 1075 (1992);  *State v. Woodson*, 140 S.W.3d 621, 629 (Mo.App. S.D. 2004).  Direct appeal counsel is not ineffective for failing to brief a point of which prejudice is a required element when counsel cannot show prejudice.  If direct appeal counsel

14

had raised this claim, the Missouri Court of Appeals in all likelihood would have rejected it due to a lack of prejudice. *Id*. This claim therefore fails.

### G. Petitioner's sixth claim

Petitioner contends that trial counsel was ineffective for failing to locate, subpoena, and depose Laura Asaro sooner than two days before trial. Petitioner seems to argue that if trial counsel had deposed Asaro sooner, counsel would have had more time to investigate claims made in the deposition. The Missouri courts' decision was not contrary to Supreme Court precedent. As discussed in the previous point, petitioner has not yet detailed any evidence that he could have discovered after deposing Laura Asaro. Petitioner points to no steps that petitioner could have taken that would have uncovered evidence favorable to petitioner. In fact, at the time of petitioner's motion for a new trial, which was filed about a month after trial, petitioner did not plead that he had been able to find any additional evidence that he was not aware of at the time of his trial based on the Asaro deposition. Petitioner thus fails to demonstrate that the timing of the deposition had any impact on his trial. Petitioner therefore fails to demonstrate a reasonable probability that the result of his trial would have been different had trial counsel deposed Asaro sooner. The Missouri courts reasonably applied *Strickland*. Petitioner's claim therefore must fail.

15

## H.   Petitioner's eighth claim

Petitioner contends that trial counsel was ineffective for failing to subpoena Cynthia Asaro and Laura Asaro's children as trial witnesses.  The Missouri courts' determination of this claim was reasonable.  In appellant's Rule 29.15 motion, he alleged that his counsel should have called Laura Asaro's mother, Cynthia Asaro, to testify that she was in a position to observe or learn about whether the children had been given "large quantities" of coins and that these gifts did not occur.  Resp. Ex. J at 83.  Appellant alleged that she could testify that "she knew nothing of appellant paying for everything with coins when he was living with her daughter." Resp. Ex. J at 83.  Appellant further alleged that Laura Asaro's children would testify that they did not receive any "gifts of large quantities of coins from appellant at or about the date of the Burger King robbery."  Resp. Ex. J at  85.

The witnesses thus would have been called to present evidence that petitioner did not give lots of coins to Laura Asaro's children and that petitioner did not pay foe "everything" with coins.  This evidence does not give petitioner a viable defense to the Burger King robbery because it does not negate any of the elements of the offenses of which petitioner was convicted.  The witnesses thus would only have served to impeach Laura Asaro's testimony,  Indeed, petitioner admitted as much in his PCR appeal brief:

16

Appellant suffered prejudice from this omission,  because Cynthia's and the children's testimony would have directly contradicted what Laura testified to.  In fact, if Laura had known that her own mother and children were going to be called as witnesses, she may not have testified to the supposed coinage gifts.  Absence of this supposed distribution-of-loot testimony, or direct contradiction of it by the witness's own mother and of the supposed recipients of the coins themselves, would have had a reasonable probability of creating a reasonable doubt...

Resp. Ex. L at 151.

Missouri law is clear that " upon cross-examination on collateral matters for the purpose of impeachment, the party is bound by the answer of the witness." *State v. Johnson*, 484 S.W.2d 491, 496 (Mo. 1972).  Further, no extrinsic evidence is admissible on a collateral matter simply to impeach a witness.  *State v. Dunson*, 979 S.W.2d 237, 242 (Mo.App. W.D. 1998).  Evidence is not collateral "if the alleged discrepancy involves a crucial issue directly in controversy or relates to 'any part of the witness' account of the background and circumstances of a material transaction, which as a matter of human experience, he would have been mistaken about if his story were true.'" *Id*., *quoting State v. Williams*, 849 S.W.2d 575, 578 (Mo.App. E.D. 1993).  In other words, extrinsic evidence may be introduced to impeach a witness' testimony only when the alleged discrepancy relates to the facts in controversy, i.e. the elements of the charged offense, or to the facts and circumstances of the charged crime.

17

The dispute over whether petitioner gave Laura Asaro's children coins is collateral because it does not relate, in the least, to the elements of the crimes at issue or the facts and circumstances of the charged crime. As petitioner stated in his PCR brief, the reason to call these witnesses would be to impeach Laura Asaro, and this fact leads to the conclusion that, in petitioner's eyes, trial counsel should have used these witnesses to challenge Laura Asaro's testimony on a collateral matter. This evidence would have been inadmissible. *State v. Dunson*, 979 S.W.2d 237, 242 (Mo.App. W.D. 1998). Trial counsel is not ineffective for failing to offer inadmissible evidence. The Missouri courts reasonably decided this issue. Petitioner's eighth claim therefore must fail.

## I.   Petitioner's ninth claim

Petitioner contends that direct appeal counsel was ineffective for failing to argue that the trial court erred in denying petitioner's motion in limine precluding evidence from Reebok in the form of business records.

Petitioner's claim fails because, as the Missouri courts implicitly determined, the business records were admissible under Missouri law. The business records exception to the hearsay rule is contained in Mo.Rev.Stat. §490.680 (2000), which states:

18

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies as to its identity and the mode of its preparation, and it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Mo.Rev.Stat. §490.692 (2000) provides that the parties may use an affidavit to meet the business records requirements and sets out the form for the affidavit, such as was used in the case at bar. *State v. Calhoon*, 7 S.W.3d 494, 495 (Mo.App. W.D. 1999). "The business records exception to the hearsay rule permits the introduction of qualified records without forcing the person who prepared the records to appear in court." *Id*.

The affidavit submitted in petitioner's trial met the requirements of Mo.Rev.Stat. §490.692 (2000) and quotes directly from the from provided in the statute. It stated:

AFFIDAVIT

Before me, the undersigned authority, personally appeared Maureen McCarthy, who, being by me duly sworn, deposed as follows:

My name is Maureen McCarthy. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of Intermediate Ltd. Attached hereto are 3 pages of records from Reebok. These 3 pages of records are kept by Reebok in the regular course of business, and it was the regular course of business of Reebok for an employee or representative of Reebok with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record and the record was made at or near the time of the act, event,

19

condition, opinion, or diagnosis.  The records attached hereto are the original or exact duplicated of the original.

Maureen McCarthy

Affined - Maureen McCarthy

In witness whereof I have hereunto subscribed my name and affixed my official seal this 19th day of July, 2001.

_____          _____

(Signed) Patricia A. McInnis                      (Seal)

My commission expires: December 8, 2006.

Resp. Ex. D at 187.  Thus, the State met all the proper burdens under Missouri law to admit the Reebok business records.  Any objection at trial, or any argument on appeal, would have been fruitless.  Direct appeal counsel was not ineffective for failing to raise a claim on appeal that had no possibility of success.  This claim must fail.

## CONCLUSION

For these reasons, respondent prays that this Court deny the petition for writ of

habeas corpus without further judicial proceedings.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General


/s/ Andrew W. Hassell
ANDREW W. HASSELL
Assistant Attorney General
Missouri Bar No. 53346

P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-3825 Fax
**andrew.hassell@ago.mo.gov**

*Attorneys for Respondent*

CERTIFICATE OF SERVICE

I hereby certify that a true and
correct copy of the  foregoing
was  mailed, postage prepaid,
this 10th day of February, 2005,
to the following, who does not
participate in this Court's ECF system:

Mr. Marcellus S. Williams, Sr. , Reg. No. 163729
Potosi Correctional Center
Route 2, Box 2222
Mineral Point, Missouri  63660


/s/ Andrew W. Hassell
ANDREW W. HASSELL
Assistant Attorney General

P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-3825 Fax
**andrew.hassell@ago.mo.gov**