**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCELLUS WILLIAMS, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:04CV1749 MLM |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner, Marcellus Williams, Sr. Doc. 2. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc 7. Petitioner filed a Traverse. Doc. 11. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 10.

## I.
## BACKGROUND

On April 2, 2001, Petitioner was charged by Amended Information for conduct occurring on or about July 25, 1998, as follows: Count I, the class A felony of robbery in the first degree in violation of Mo. Rev. Stat. § 569.020, in that, acting with others, Petitioner forcibly stole U.S. currency in the possession of Sean Merriman, agent for Burger King, and in the course thereof Petitioner displayed what appeared to be a deadly weapon; Count II, the felony of armed criminal action in violation of Mo. Rev. Stat. § 572.015, in that Petitioner committed the felony of robbery described in Count I by, with, and through the use, assistance, and aid of a deadly weapon; Counts

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

III, IV, and V, the class B felony of kidnaping Sean Merriman, Paison Horiace, and Bradley Clark, respectively,[1] in violation of Mo. Rev. Stat. § 565.110, in that acting with others Petitioner "unlawfully confined [them] without [their] consent for a substantial period, for the purpose of facilitating the commission or flight after the commission of the felony of robbing the Burger King at 8075 Manchester Road"; and Count VI, the class C felony of stealing a motor vehicle in violation of Mo. Rev. Stat. § 570.030, in that acting with others Petitioner appropriated a 1986 Mazda, which was in the possession of Paison Horiace, without his consent and with the purpose of depriving "the victim thereof." In Count VII Petitioner was charged as a prior and persistent offender in that he pleaded guilty to the following felonies: (1) on or about August 3, 1987, Petitioner pleaded guilty to the felony of burglary in the second degree for events occurring on January 20, 1987; (2) on or about August 13, 1988, Petitioner pleaded guilty to the felony of burglary in the second degree for events occurring on December 18, 1987; and (3) on or about February 7, 1991, Petitioner pleaded guilty to the felony of burglary in the second degree for events occurring on August 23, 1990. Resp. Ex. D at 120-24.

At Petitioner's trial Sean Merriman, the manager of the Burger King restaurant in Brentwood, Missouri, testified that in the early morning hours of July 24, 1998, Petitioner and two other men followed Burger King employee Paison Horiace back into the restaurant after he took out the trash. Resp. Ex. A at 181-183. One of the men, later identified as Petitioner, wore a multicolored shirt and had a gun. Once inside, the three men ordered the employees to the ground. After Merriman identified himself as the manager the men directed him to go to the safe. The men made Merriman

---

[1]     Prior to jury deliberations Count III which alleged that Petitioner kidnaped Sean Merriman was withdrawn because the door to the room in which Merriman was confined, as described below, was not closed. Resp. Ex. A at 381.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

crawl on his hands and knees from the back room into the safe; they kicked Merriman several times; Merriman's head was slammed against the floor; and a gun was pointed at the back of his head. The person with the gun told Merriman that if he did not open the safe he would be shot. Merriman complied and the men pulled the money out of the safe. Resp. Ex. A at 179-185.

Merriman further testified that once the safe had been opened and the money obtained, the three men then bound Merriman's hands behind his back with tape and left him in a back office. Merriman also testified that he then heard noises like the three men were running around; that he heard complete silence "a couple of minutes later"; and that he then got himself out of the tape and called 911. Resp. Ex. A at 185-186. Also, Merriman testified that the night of the robbery there was a lot of change in the safe and that usually there was $300 to $400 in quarters, $100 in dimes, $40 in nickels, and $20 in pennies in the safe. Resp. Ex. A at 180.

Bradley Clark, an employee of Burger King, testified that the three men had stockings over their heads; that the man with the striped shirt had a gun; that Clark and Horiace were bound with tape and locked in the walk in cooler; that when Horiace was put in the cooler the men took the keys to his car; that the men took eighty dollars from Clark; and that Clark and Horiace were in the cooler for about fifteen minutes until the police arrived. Resp. Ex. A at 254,253-55. Horiace testified that after taking his keys the men left in Horiace's car. Resp. Ex. A at 358.

The robbery was videotaped and the videotape was shown to the jury. Resp. Ex. A at 192. Petitioner was captured by the police on August 31, 1998, at which time he was wearing a striped shirt. At trial Bradley Clark identified the shirt seized from Petitioner at the time of his arrest as the shirt that was worn by the robber with the gun. Resp. Ex. A at 253, 334. At Petitioner's trial Laura Asaro, a former girlfriend of the Petitioner, identified Petitioner as the individual wearing the striped

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

shirt in the video tape of the robbery and identified the seized shirt as being owned by Petitioner. She also testified that Petitioner spoke in a joking manner to a person from whom he bought crack about the Burger King robbery. Resp. Ex. A at 233-35, 237-38, 341. Asaro's testimony is further set forth in detail below.

Petitioner did not testify at trial. He presented Paison Horiace as a witness. Horiace testified that he believed that another individual who had previously worked at the Burger King was the robber with the gun. Resp. Ex. A at 350, 355.

Petitioner was convicted by a jury of robbery in the first degree, armed criminal action, two counts of false imprisonment, in violation of Mo. Rev. Stat. § 565.130, and stealing a motor vehicle. Resp. Ex. D at 166-70. The court found that Petitioner was a persistent offender and sentenced him to concurrent terms of thirty years for robbery in the first degree, twenty-five years for armed criminal action, one year each for the false imprisonment counts, and seven years for stealing a motor vehicle. Petitioner's concurrent sentences were to be served consecutive to a previously imposed sentence for robbery in the first degree.[2] Resp. Ex. A at 228-29; Resp. Ex. J at 106.

---

[2]    Respondent has noted that Petitioner is also sentenced in an unrelated case to death for murder in the first degree. See Williams v. State, 2005 WL 1432379 (Mo. June 21, 2005). As noted by the Missouri Supreme Court, Laura Asaro testified in Petitioner's murder trial as follows:

> Asaro testified at trial that she saw Williams' bloody shirt and the laptop computer. She also saw Williams place the clothes in his backpack and throw the backpack into a storm sewer. Asaro further testified that, the next day, while retrieving some of her clothing from the car trunk, she found [the victim's] purse, which contained [the victim's] state identification card, coin purse, and several grocery coupons. Asaro confronted Williams about the items. Williams then confessed to Asaro the details of the murder.

2005 WL 1432379, at *1.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner filed a direct appeal. Ex. F at 28-32. On April 23, 2002 the Missouri appellate court denied Petitioner's direct appeal and affirmed his conviction. Resp. Ex. I at 1. On June 10, 2002, the Missouri Supreme Court denied Petitioner's application for transfer. Resp. Ex. J at 106.

Petitioner filed a pro-se post-conviction relief motion. Resp. Ex. J at 106. Counsel filed an amended Rule 29.15 motion for post-conviction relief. Resp. Ex. J at 37-99. The motion court denied the amended Rule 29.15 motion. Resp. Ex. J at 107. Petitioner filed an appeal of the denial of his Rule 29.15 motion with the Missouri appellate court. By Order dated April 20, 2004, the Missouri appellate court denied Petitioner's appeal of the motion court's denial of post-conviction relief. State v. Williams, 135 S.W. 3d. 503 (Mo. Ct. App. 2004).

On December 15, 2004, Petitioner filed a Petition pursuant to 28 U.S.C. § 2254. In his § 2254 Petition, Petitioner raises the following issues:

(1)      The prosecutor committed prosecutorial misconduct by "misleading and falsely arguing to the jury that the Petitioner's running from the police ... was evidence of 'consciousness of guilt' of the robbery";

(2)      Petitioner received ineffective assistance of direct appeal counsel because counsel failed to raise on direct appeal that the prosecutor mislead the jury into believing that Petitioner fled from the police after allegedly committing the Burger King robbery;

(3)      Petitioner received ineffective assistance of trial counsel because trial counsel failed to object to the prosecutor's "use of flight from one place at one time as evidence of anything relating to another place and time";

(4)      Petitioner received ineffective assistance of counsel because direct appeal counsel failed to argue on appeal that although the court granted the State's motion in limine which prevented Petitioner from impeaching Laura Asaro on certain grounds, the prosecutor argued to the jury that the defense had not adduced evidence attacking Laura Asaro's credibility;

(5)      Petitioner received ineffective counsel because direct appeal counsel failed to argue an abuse of discretion by the trial court in overruling the Petitioner's motion for

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

continuance or, in the alternative, the exclusion of Laura Asaro's testimony;

**(6)** Petitioner received ineffective assistance of trial counsel because his trial counsel failed to locate, subpoena and depose Laura Asaro "before catching her with the prosecution" two days before trial;

(7) Petitioner received ineffective assistance of counsel because trial counsel failed to object to references to Laura Asaro during the prosecutor's closing argument although the prosecutor obtained a motion in limine regarding Laura Asaro's testimony;

**(8)** Petitioner received ineffective assistance of trial counsel because trial counsel failed to subpoena as defense witnesses Cynthia Asaro, who is Laura Asaro's mother, and Laura Asaro's children;

**(9)** Petitioner received ineffective assistance of direct appeal counsel because appellate counsel failed to argue on appeal that the trial court erred in denying the Petitioner's motion in limine regarding "business records" from Reebok.

Doc. 2 at 6(a)-(y).

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

(1) "was contrary to . . . clearly established Federal law, as

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. Id. at 411. "'Rather the application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 410). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, 534 U.S. 1138 (2002).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1),

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's decision "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001), cert. denied, 535 U.S. 934 (2002). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state

8

court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.") (citations omitted), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 125 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id. at 462.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 866 (quoting Hamilton v. Nix,

809 F.2d 463, 470 (8th Cir.1987) (en banc)).

# III.
# EXHAUSTION ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12.

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted). In <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999), the United States Supreme Court determined that to satisfy the exhaustion requirement of 28 U.S.C.§ 2254(b)(1), a state

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

prisoner must present his or her claims to a state's supreme court, even where review by that supreme court is discretionary and not mandatory. The Eighth Circuit has held that the exhaustion doctrine, as stated in O'Sullivan, should not be applied in pre-O'Sullivan cases, stating, "we conclude that justice dictates a different outcome . . . because the State has not consistently asserted the failure to seek a discretionary transfer is a bar to federal habeas relief." Dixon v. Dormire, 263 F.3d 774, 781 (8th Cir. 2001). See also Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002); Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991) ("[O]nly a 'firmly established and regularly followed state practice' will bar federal court review.")).

In Randolph, 276 F.3d at 404, the Eighth Circuit held that "the Missouri Supreme Court has recently shed light on its requirements for exhaustion of state remedies." The court further noted that an amended Missouri Supreme Court Rule 83.04 "'reflects the principle that transfer from the court of appeals to [the Missouri Supreme] Court is an extraordinary remedy that is not part of the standard review process for purposes of federal habeas corpus review.'" Id. By amending Rule 83.04, "the Missouri Supreme Court has made it clear that the law of Missouri" does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." Id. The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. Id. at 405.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan v. Walker, 523 U.S. 167 (2001), recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

Respondent takes the position that Petitioner has not procedurally defaulted any of the issues which he raises in his § 2254 Petition. Petitioner in the matter under consideration has raised the issues before the State appellate court which he raises in his § 2254 Petition.[3] The court finds, therefore, that Petitioner has exhausted his State remedies and that he has not procedurally defaulted any of the issues which he raises before this court. The court further finds that Petitioner's § 2254 Petition was timely filed.

## IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the

---

[3] In his direct appeal Petitioner argued that the trial court abused its discretion in *admitting testimony* that Petitioner ran away from two police officers on August 31, 1998. Resp. Ex. F at 31. In Ground 1 Petitioner contends that the prosecutor mislead the jury in regard to *argument* that Petitioner ran from police. He raised this issue regarding prosecutorial *argument* in both his amended post-conviction relief motion and the appeal of his post-conviction relief motion. The motion court only addressed the issue of improper argument in terms of alleged ineffective assistance of direct appeal and trial counsel. The Missouri appellate court did not state its reasons for affirming the decision of the motion court. The court notes that it is not clear whether Petitioner properly raised the issue of Ground 1 in a post-conviction relief motion pursuant to Missouri Rule 29.15. Although Respondent does not argue that Petitioner procedurally defaulted any grounds upon which he seeks relief or that he did not properly raise his grounds for relief pursuant to State law, a federal court has discretion to consider such issues sua sponte. King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001), cert. denied, 535 U.S. 934 (2002). The court will nonetheless assume, arguendo, that Petitioner has fairly and properly presented the issue of Ground 1 to the State courts and that he has not defaulted this issue.

13

Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v.</u> <u>United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u> The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Strickland</u>, 466 U.S. at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Federal law provides in regard to direct appeal counsel's failure to raise certain issues on appeal, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has further stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons v. Lockart, 915 F.2d 372, 375 (8thCir. 1990)). Indeed, "[s]trategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994) (citation omitted).

## V.
## DISCUSSION

**Ground 1 - The prosecutor committed prosecutorial misconduct by "misleading and falsely arguing to the jury that the Petitioner's running from the police ... was evidence of 'consciousness of guilt' of the robbery":**

Petitioner alleges in Ground 1 that his constitutional rights were violated due to the

15

prosecutor's argument to the jury that Petitioner's flight from the police constituted "consciousness of guilt." Petitioner contends that he was not running from the Burger King robbery in St. Louis County but rather from a donut shop that had been robbed in St. Louis City. Petitioner states that use of this flight in connection with the Burger King robbery was false and misleading and that the prosecutor knew at all times that Petitioner was running from the police thirty days after the Burger King robbery was committed and that he was running in connection with a totally different robbery, that of a doughnut shop. Doc. 2 at 6(a). Petitioner further argues that "the flight from the doughnut shop in the City of St. Louis was not incidental to the Burger King case ... but collateral to it" and that, therefore, the argument presented by the prosecution was an attempt "to make the jury believe, falsely, that [P]etitioner had fled from the scene of the Burger King robbery, or that [P]etitioner was running from the City police officers because he knew that he was wanted or guilty of said Burger King robbery." Doc. 11 at 5.

Petitioner was not captured on the day of the Burger King robbery. Rather, he was apprehended on August 31, 1998, at which time officers saw Petitioner wearing the striped shirt which he wore during the Burger King robbery. In support of Ground 1 Petitioner addresses the prosecutor's direct examination of police officers. The court notes that upon the prosecutor's asking Officer Daniel Peek of the St. Louis Metropolitan Police Department what the nature of his assignment was on August 31, 1998, the date Petitioner was apprehended, Petitioner's counsel objected on the ground that this was not a relevant question. It was noted at this time that the prosecutor had instructed this witness not to testify about the robbery of a doughnut shop and that there was a gun in the bag Petitioner was holding when he was seen by the officer. Resp. Ex. A at 287-88. Petitioner's counsel then stated that she thought that the flight, the running away, indicated

another arrest. Resp. Ex. A at 288. Petitioner's counsel clarified that she believed that Officer Peek should not be permitted to describe Petitioner's flight from this officer because "it leads the jury to believe that he was involved in another criminal offense." Resp. Ex. A at 289-90. The trial court noted that "flight is always consciousness of guilt." Resp. Ex. A at 290. The prosecutor then argued to the court that Petitioner's flight not only showed a consciousness of guilt but it also showed that Petitioner realized how important the shirt was as "once he saw the police he ran, they lost sight of him, he concealed the shirt." The court overruled the objection of Petitioner's counsel and the prosecutor continued to question Officer Peek.

The prosecutor also called Officer Nocchiero as a witness. The prosecutor asked Officer Nocchiero what Petitioner did when that this officer stopped his patrol car and told Petitioner that he wanted to talk to him. At this point Petitioner's counsel renewed her objection, which was overruled. Officer Nocchiero then testified that Petitioner turned around and "began running." Resp. Ex A at 296.

During closing argument the prosecutor referred to Merriman's description of the robber. The prosecutor then stated that Petitioner is left handed, that the robber had the gun in his left hand, that the video showed that the robber reached to grab the video camera with his left hand, and that the robber switched the gun to his right hand and turned the camera with his left hand. Resp. Ex. A at 385-86. After arguing that these facts pointed to Petitioner's guilt the prosecutor next stated that Petitioner "ran from the police. That's consciousness of guilt. He's running from the police." Resp. Ex. A at 386. At that point Petitioner's trial counsel objected on grounds previously stated and the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

objection was overruled.[4]  Resp. Ex. A at 386.  The prosecutor continued to argue that:

> [Petitioner] ran from the police.  And then he took that shirt off.  He was wearing the shirt and he took it off and put it in his bag.  He hid the shirt.  He knows that's the shirt he wore in that robbery. He knows how unique that shirt is.  He took it off.  He didn't want to get caught wearing the shirt.  He put it in his bag.  Put it in his bag 'cause it's a shirt he wore all the time.  So he hid the shirt.  That's evidence that he knows - - He knows that's good evidence that he committed this robbery. Committed a robbery in a very unique shirt, his shirt he wore all the time.

Resp. Ex. A at 387.

At that point Petitioner's counsel again objected.  The trial court overruled this objection.

Because the trial court held that "flight is always consciousness of guilt" in response to the objection of Petitioner's counsel it can argued that the Missouri court addressed Petitioner's Ground 1 on its merits.  As such, this court will consider the issue of Ground 1 pursuant to Williams. Because, however, the Missouri Appellate Court summarily denied the claim raised by Petitioner in Ground 1, this court will alternatively review Ground 1 pursuant to a pre-AEDPA standard.  See Robinson, 278 F.3d at 865.

In regard to Petitioner's argument that testimony regarding his flight should have been excluded, the United States Supreme Court  held in Estelle v. McGuire that "federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a

---

[4]      Petitioner's counsel had previously objected to the prosecutor's closing argument as being improper, because matters were not in front of the jury, and because matters argued were not in evidence.  At this point counsel stated that she was objecting for reasons previously stated. Resp. Ex. A at 381-85.

conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. See  Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Indeed, questions concerning the admissibility of evidence are reviewable in federal habeas corpus proceedings only when the alleged error resulted in a trial so fundamentally unfair as to deny the petitioner due process of the law. See Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004) (holding that federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights") (citing Estelle, 502 U.S. at 68), cert. denied, 125 S.Ct. 902 ( Jan. 10, 2005); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).  See also Sweet  v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal habeas corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process).

Significantly, under Missouri law, evidence of flight is admissible. State v. Chapman, 876

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

S.W.2d 15, 18 (Mo. Ct. App. 1994) ("Evidence of flight, whether from the scene of crime or elsewhere, is admissible to show Defendant's consciousness of guilt") (citing State v. Brown, 735 S.W. 2d 152, 153 (Mo. Ct. App. 1987); State v. Hayes, 713 S.W. 2d 275, 277 (Mo. Ct. App. 1986)). As such, the trial court correctly stated the law of Missouri in regard to such evidence.

The Eighth Circuit has addressed the admission of evidence of flight under federal law as follows:

> We have indicated, however, that courts should be cautious in admitting evidence of flight because it is often only marginally probative of guilt. United States v. Hankins, 931 F.2d 1256, 1261 (8th Cir.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991). To determine whether flight evidence is sufficiently probative of guilt to be admissible, we look to whether the evidence supports the following four inferences: that the defendant fled; that the flight evinced consciousness of guilt; that the guilt related to the crime charged in this case; and that the consciousness of guilt flowed from actual guilt of the crime charged. Id.

United States v. Chipps, 410 F.3d 438, 449-50 (8th Cir. 2005).

Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." See United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)). Petitioner has not shown that the testimony regarding his flight was not relevant and that its probative value, as suggested by the prosecutor, outweighs the danger of unfair prejudice.

To the extent Petitioner argues in Ground 1 that the trial court erred in admitting testimony regarding Petitioner's flight the court finds that Petitioner has not raised an issue which is cognizable pursuant to federal habeas review. See Estelle, 502 U.S. at 67-68; Scott, 915 F.2d at 1190-91.

20

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Alternatively, the court finds that the decision of the trial court in admitting "evidence of flight" was not contrary to federal law and that it was a reasonable application of federal law. See Chipps, 410 F.3d at 449-50. Also, pursuant to a pre-AEDPA standard Petitioner was not denied constitutional rights because the trial court allowed evidence of Petitioner's flight to be admitted. See id.

In regard to that portion of Petitioner's Ground 1 in which he suggests that the prosecutor's argument was improper, the court notes that under federal law, to establish a violation of due process as a result of improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). A habeas petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. See Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d. 851, 854 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments, "and this court will not reverse absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992).

Indeed, during closing argument the prosecutor addressed the strength of the evidence against Petitioner including Merriman's description of the robber and that the robber and Petitioner were left handed. The prosecutor then argued that Petitioner's consciousness of guilt was evidenced by his reaction to the police officers' stopping him including the facts that Petitioner ran and that he concealed the shirt. See Chipps, 410 F.3d at 449-50; Conrad, 320 F.3d.at 854. As such, Petitioner has not shown that the prosecutor's remarks were improper, that he was prejudiced by the allegedly objectionable testimony and argument referring to Petitioner's running from the police, or that the trial court abused its discretion in regard to both testimony and prosecutorial argument as addressed in Petitioner's Ground 1. See Conrad, 320 F.3d.854; Johnson, 968 F.2d 769. Additionally, the trial court's overruling the objection of Petitioner's counsel to the argument of the prosecutor was not contrary to federal law and it was a reasonable application of federal law. See Conrad, 320 F.3d.854; Johnson, 968 F.2d 769. The court finds, therefore, both pursuant to a pre-AEDPA standard and pursuant to Williams without merit Petitioner's claim in Ground 1 that his constitutional rights were

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

violated because of prosecutorial argument and further finds that Ground 1 should be dismissed.

**Ground 2** - **Petitioner received ineffective assistance of direct appeal counsel because counsel failed to raise on direct appeal that the prosecutor mislead the jury into believing that Petitioner fled from the police after allegedly committing the Burger King robbery; and**

**Ground 3** - **Petitioner received ineffective assistance of trial counsel because trial counsel failed to object to the prosecutor's "use of flight from one place at one time as evidence of anything relating to another place and time":**

Petitioner alleges in Ground 2 that the failure of direct appeal counsel to present the issue of Ground 1 on appeal is ineffective assistance of counsel. Doc. 2 at 6(a). In Ground 3 Petitioner contends that the failure of trial counsel to object to the prosecutor's allegedly improper argument referencing Petitioner's flight impaired his right to a fair trial. Doc. 11 at 11. In Ground 3 Petitioner argues that he received ineffective assistance of trial counsel because trial counsel failed to object to the prosecutor's "use of flight from one place at one time as evidence of anything relating to another place and time." [5] Doc. 2 at 6(c).

The Missouri court of appeals summarily denied Petitioner relief on the issues raised in Grounds 2 and 3. <u>Williams</u>, 135 S.W.3d at 504. In its denial of Petitioner's Rule 29.15 motion the motion court held as follows:

> [Petitioner's trial counsel's] and [Petitioner's appellate counsel's] failure to preserve and raise on appeal, the claim that the prosecutor committed misconduct by misleading the jury in believing that the appellant fled from the police after allegedly committing the robbery of the Burger King in St. Louis County, did not prejudice the Movant in that evidence of flight, whether from the scene of the crime or elsewhere, is admissible to show Defendant's consciousness of guilt. <u>State v. Chapman</u>, 876 S. W. 2d 15,18 (E.D. 1994) *citing* <u>State v. Brown</u>, 735 S.W. 2d 152 (Mo. App. 1987); <u>State v. Hayes,</u> 713 S.W. 2d 275, 277 ( Mo. App. 1986). There is no reasonable

---

[5]       The court notes that it is unclear if Petitioner intends to address references to flight other than in closing argument. The court will assume, arguendo, that Petitioner intends in Ground 3 to address references to flight in the questioning of police officers as well as during the prosecutor's closing argument.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

probability that the outcome of Movant's trial or appeal would have been different had this objection been made and raised on appeal.

Resp. Ex. J at 111.

Pursuant to <u>Williams</u>, the court will consider federal law applicable to Petitioner's Grounds 2 and 3 in which he alleges ineffective assistance of counsel. First, the court notes, as set forth above in regard to Ground 1, Petitioner's trial counsel repeatedly objected to references of Petitioner's flight both during the questioning of Officers Peek and Nocchiero and during the prosecutor's closing argument. The court finds, therefore, that Petitioner's allegation in Ground 3 that he received ineffective assistance of counsel because trial counsel failed to object to the prosecutor's references to flight is without factual basis.

Additionally, as set forth above, in <u>Strickland</u> the Supreme Court has established a two pronged test for examining effective assistance of counsel. This standard, applicable to both trial and appellate counsel, requires that the court determine that the conduct of counsel was both unreasonable and prejudicial. The motion court correctly applied the two prong analysis required by <u>Strickland</u> as it determined that the prosecution's references to flight were consistent with Missouri evidentiary law and that evidence of Petitioner's flight did not prejudice him. Also, upon addressing the issue of whether a trial attorney's failure to object to allegedly objectionable argument by the prosecutor, the Eighth Circuit has held that <u>Strickland</u> requires that the habeas petitioner show that the verdict would have been different if the prosecutor had not engaged in the behavior. The habeas petitioner must demonstrate that "but for" counsel's professional errors, the result would have been different. <u>See</u> <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999).

The court has set forth the standard for improper prosecutorial argument in its discussion of Petitioner's Ground 1. As discussed above, the remarks of the prosecutor made during closing

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

argument were not so detrimental to alter the outcome of the trial. Moreover, as discussed above, evidence of flight is admissible both under federal and state law when it meets certain qualifications. Thus, it cannot be said that the prosecutor's argument was so "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Culkin, 45 F.3d at 1235 (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993). Petitioner, therefore, was not prejudiced because his appellate counsel did not raise the issue of improper reference to flight during closing argument on appeal and assuming, arguendo, that his trial counsel did not object to references to flight during questioning of police officers and/or during closing argument.

The court finds, therefore, that the State court's decision regarding Petitioner's Grounds 2 and 3 is not contrary to federal law and that it is a reasonable interpretation and application of clearly established federal law. Moreover, the State court reasonably applied clearly established federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Grounds 2 and 3 are without merit and that they should be dismissed.

**Ground 4- Petitioner received ineffective assistance of counsel because direct appeal counsel failed to argue on appeal that although the court granted the State's motion in limine which prevented Petitioner from impeaching Laura Asaro on certain grounds, the prosecutor argued to the jury that the defense had not adduced evidence attacking Laura Asaro's credibility.**

In support of Ground 4 Petitioner argues that he was denied effective assistance of counsel because direct appeal counsel failed to raise on appeal that the prosecution's motion in limine which prevented Petitioner from questioning Laura Asaro on certain grounds was a violation of his constitutional rights. Doc. 2 at 6(e). Petitioner further contends that his constitutional rights were violated because the motion in limine precluded Petitioner from attacking Laura Asaro's credibility and that, therefore, it was improper for the prosecutor to argue that Petitioner had not attacked her credibility. Petitioner argues that it was inconsistent for the prosecutor to suggest that Petitioner did

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

not show that Laura Asaro had a motive to lie when the motion in limine precluded such argument; that the prosecutor argued in support of the State's motion in limine that Laura Asaro had no motive to lie; and that Laura Asaro did have "plenty of motive to come in the court and lie" as she was also a witness in Petitioner's pending murder trial and was expecting to receive a part of a $10,000 reward for her testimony in the murder trial. Doc. 2 at 6(f)-(g).

The State's motion in limine, which the trial court granted and which is the subject of Petitioner's Ground 4, addressed the following testimony:

1. The number of arrests of municipal convictions of Laura Asaro.

2. Wether Laura Asaro was ever a prostitute or a drug addict.

3. The number of children Laura Asaro had and the identity of her children's fathers.

4. That Laura Asaro was unemployed.

5. That Laura Asaro may have given controlled substances to others and that she may have possessed controlled substances.

Resp. Ex. J at 109.

That portion of the prosecutor's closing argument which Petitioner addresses in Ground 4 is as follows: "All this other evidence corroborates Laura Asaro. This woman has no motive to lie. No motive to lie. None at all. She said she loved this guy." Resp. Ex. A at 388. Petitioner's counsel objected to this argument on the grounds that the prosecutor was vouching for the credibility of the witness. The court overruled the objection and the prosecutor continued to argue that:

There is no evidence at all that there is any reason for her to come in here and lie. None. Not even an implication. Not even a suggestion. She came in here, she said she loved this man, and she told you the truth. She was sworn to tell the truth just like any other witness. She came in here and told you what she said and what he did relative to the crime.

The defendant joked about this crime. He was laughing about it. It was funny

26

to him. That says "Joked," though you probably can't read my handwriting. He joked about this crime. He laughed about it. He thought it was funny how scared these guys were when he put the gun to the back of Mr. Merriman's head. He was laughing about it when he was buying crack.

Resp. Ex. A at 388-89.

In support of Ground 4 Petitioner cites State v. Weiss, 24 S.W.3d 198 (Mo. Ct. App. 2000). Weiss, which decision was issued after the date of Petitioner's trial, held as improper closing argument suggesting that the defendant failed to present evidence, when in fact the prosecution knew such evidence had been excluded. As such, Weiss holds that a prosecutor cannot argue that evidence should be excluded and then argue that it does not exist. That, however, is not what transpired in the matter under consideration.

Moreover, Petitioner did adduce evidence at trial of Asaro's drug use and of the number of children she had.[6] Resp. Ex. A at 240-41, 243-45. Despite the court's granting the State's motion in limine, on cross-examination Petitioner's counsel was permitted to adduce evidence that Asaro and Petitioner "did crack and drank"; that she was not Petitioner's girlfriend at the time of trial; that Asaro has six children; and that Asaro's mother had custody of her children. Resp. Ex. A at 241-45.

The Missouri Court of Appeals summarily denied Petitioner relief on the issue raised in Ground 4. Williams, 135 S.W.3d at 504. Upon denying Petitioner's Rule 29.15 motion on the issue raised in Ground 4 the motion court held as follows:

[Petitioner's appellate counsel's] failure to claim prosecutorial misconduct due to the State obtaining a court order limiting the cross examination of Laura Asar[o],

---

[6]  Upon the prosecutor's objecting to the defense asking Asaro how many children she had, the court ruled that there was some relevancy to the number of children she had in that Asaro testified that Petitioner gave her children money. Resp. Ex. A at 243-44. The prosecutor then reminded the court that the motion in limine precluded the defense from questioning Asaro regarding "multiple fathers." Resp. Ex. A at 244.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and then arguing that the defense did not advance any evidence attacking her credibility, did not prejudice the Movant in that the prosecutor committed no misconduct in this case.

...

The prosecutor in the matter under consideration did *not* argue in his closing argument that Ms. Asar[o] had never been arrested or convicted in a municipal court. Nor did the prosecutor argue that Ms. Asar[o] was not, nor had ever been a prostitute or a drug addict. The prosecutor never mentioned the number of children of Ms. Asar[o], nor the names of the father(s). The prosecutor never mentioned Asar[o]'s employment status, nor her activities regarding controlled substances. The number of arrests, municipal convictions, or specific allegation of immorality of the States' witnesses, which did not lead to convictions, is inadmissible and improper cross-examination. State v. Schupp, 677 S.W. 2d 909 (Mo. App. 1984)("The credibility of a witness cannot be attacked by showing a specific act of immorality"); State v. Michalski, 725 S.W. 2d 620, 621 (Mo. App. 1987). There is no reasonable probability that the outcome of Movant's appeal would have been different had [Petitioner's appellate counsel] claimed this prosecutorial misconduct.

Resp. Ex. J at 109-110 (emphasis in original).

Pursuant to the Court's decision in Williams, the court will consider federal law applicable to Petitioner's claim of ineffective assistance of counsel in Ground 4. As stated above, in Strickland, the Supreme Court established a two prong test applicable to ineffective assistance of counsel claims. In order to deny a claim of ineffective assistance of counsel, the court must determine that the action of counsel was reasonable and there was no prejudicial effect on the Petitioner. The State court applied this standard and determined that counsel's failure to raise the underlying issue of Ground 4 on appeal was both reasonable in light of the standards of the State courts in preventing questioning of witnesses on certain types of information and that it not prejudice the Petitioner as there is no reasonable probability that the outcome of Petitioner's appeal would have been different had the issue of prosecutor's argument regarding Asaro been raised on appeal. The State court further noted that the argument made by prosecution was not impeachable on any of the facts excluded by the in limine

28

order. Thus, the State court considered the prejudice prong of the Strickland test for ineffective assistance of counsel and concluded that Petitioner was not prejudice by his counsel's failure to raise the issue of prosecutorial argument in regard to Laura Asaro on appeal. Moreover, as stated above, it is proper for appellate counsel to winnow the issues raised on appeal. Garrett, 78 F.3d at 1306.

As discussed above pursuant to the court's addressing Petitioner's claim in Ground 1, a claim of prosecutorial misconduct by improper argument during closing argument can only be shown if the remarks are of such grave error that the fundamental fairness of the trial is compromised, establishing a violation of due process. Darden, 477 U.S. 168, 181. This requires that without the statement of the prosecutor, there is a reasonable probability that the jury would have returned a different verdict. Crespo 818 F.2d 684, 687.

In the matter under consideration during closing argument the prosecutor addressed Laura Asaro's identification testimony and stated that Asaro identified Petitioner as the man in the videotape, identified the shirt at issue, and testified that Petitioner confessed to her. The prosecutor further argued that Asaro's testimony that Petitioner gave large amounts of change to her children and that he bought crack with change corroborated her other testimony. Resp. Ex. A at 383-84. To the extent that the prosecutor's argument suggested that Asaro had no motivation to lie, such argument was not prejudicial and/or unfair. Darden, 477 U.S. at 181. Moreover, the court notes that the prosecutor's argument correctly reflected Asaro's testimony.

To the extent that Petitioner's Ground 4 alleges that the trial court improperly granted the motion in limine regarding Asaro's testimony, the court has set forth above the extent to which a federal court pursuant to habeas review will address a state court's evidentiary rulings. See Estelle, 502 U.S. at 67-68; Evans, 371 F.3d at 443; Scott, 915 F.2d at 1190-91; Turner, 845 F.2d at 169.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As further set forth above, under federal law the admission of evidence is within the discretion of the trial court, and "the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." Macklin, 104 F.3d at 1049.

Significantly, Fed. R. Evid. 403 states, in relevant part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The Advisory Committee notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

Also, the Eighth Circuit has held as follows in regard to attacking the credibility of witnesses:

> It is well settled that the sixth amendment right of confrontation includes the right to cross-examine witnesses, Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1109-1110, 39 L.Ed.2d 347 (1974); Patterson v. McCarthy, 581 F.2d 220 (9th Cir. 1978), and that an important function of cross-examination is to test the witness's motivation in testifying. Davis v. Alaska, supra, 415 U.S. at 316-17, 94 S.Ct. at 1110-1111; Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Patterson v. McCarthy, supra, 581 F.2d at 221.

> However, it is also true that the trial court had discretion to weigh the possible prejudice which might ensue from opening up collateral matters. United States v. Qualls, 500 F.2d 1238, 1240 (8th Cir.), cert. denied, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974).

United States v. Witschner, 624 F.2d 840, 844-45 (8th Cir. 1980).

Thus, the proper consideration for a trial court upon excluding matters from cross-examination is the prejudicial impact of testimony and whether there is "insufficient nexus to bias" on the part of the witness. Id. at 845. Where the tendency of testimony to show bias or interest on a witness's part is remote, a trial court properly limits cross-examination in regard to the testimony. United States v. Garrison, 168 F.3d 1089, 1094 (8th Cir. 1999). Further, the Eighth Circuit has

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

recently held that:

> Where a defendant claims a violation of the Confrontation Clause resulting from a district court's limitation on cross-examination, we will not reverse the ruling absent a clear abuse of discretion and a showing of prejudice. <u>United States v. Ortega</u>, 150 F.3d 937, 941 (8th Cir.1998), cert. denied, 525 U.S. 1087, 119 S.Ct. 837, 142 L.Ed.2d 693 (1999). A witness's motivation for testifying should be revealed to the jury so the jury can assess its impact on the witness's credibility. <u>Id.</u>; <u>Davis v. Alaska</u>, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). But a district court has wide latitude to impose reasonable limits on the cross-examination of a witness regarding his motivation to testify. <u>Ortega</u>, 150 F.3d at 941.

<u>United States v. Jakoubek</u>, 411 F.3d 951, 953 (8th Cir. 2005).

Indeed, in the matter under consideration the evidence excluded in the motion in limine would not have established that Asaro was lying regarding identification evidence nor would such evidence have been probative of Petitioner's innocence. See <u>Estelle,</u> 502 U.S. at 67-68; <u>Jakoubek</u>, 411 F.3d at 953; <u>Macklin</u>, 104 F.3d at 1049; <u>Witschner</u>, 624 F.2d at 844-45. The court, therefore, finds that the State court's decision denying the Petitioner's argument that he was denied effective assistance of direct appeal counsel as alleged in Ground 4 is not contrary to federal law and is a reasonable application of federal law. See <u>Strickland,</u> 466 U.S. at 694; <u>Garrett</u>, 78 F.3d at 1306. Moreover, the State court reasonably applied federal law to the facts of Petitioner's case in regard to the issues raised in Petitioner's Ground 4. The court finds, therefore, that Petitioner's Ground 4 is without merit and that it should be dismissed.

**Ground 5-Petitioner received ineffective counsel because direct appeal counsel failed to argue an abuse of discretion by the trial court in overruling the Petitioner's motion for continuance or, in the alternative, the exclusion of Laura Asaro's testimony:**

Petitioner alleges in Ground 5 that he was denied effective assistance of counsel due to the failure of direct appeal counsel to assert a claim of abuse of discretion by the trial court in overruling Petitioner's motion for a continuance or, in the alternative, the exclusion of Laura Asaro's testimony.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Doc. 2 at 6(I). Petitioner further contends that "[d]irect-appeal counsel's failure to include in the first point on appeal reasons (a) through (h), which were presented and preserved for appellate review by trial counsel in the motion for new trial, and only choosing to brief one (1) of the nine (9) preserved reasons why a continuance should have been granted or in the alternative exclude Laura Asaro as a state's witness diminished the impact of the grievance, and the trial court's abuse of discretion, but also denied [P]etitioner of his right to due process and effective assistance of counsel." Doc. 2 at 6(i); Doc. 11 at 12. In his motion for a new trial Petitioner argued that the prosecutor deliberately attempted to thwart Petitioner's access to Asaro and that Petitioner was not able to depose her until the Friday prior to trial. Resp. Ex. D at 171. In support of this claim Petitioner identified aspects of Asaro's testimony in her deposition of which Petitioner alleged that he did not have notice until the deposition; Petitioner identified this testimony as items (a) through (i). Resp. Ex. A at 171-72. These items included Asaro's testimony as follows: (a) Petitioner gave her children change; (b) he paid for crack with change; (c) he discussed the Burger King robbery while buying cocaine; (d) he told Asaro not to testify; (e) he paid for gas and cigarettes with coins; (f) he kept the coins in a Crown Royal bag; (g) Asaro's cocaine habit became worse while she was having a relationship with Petitioner; (h) Asaro viewed the surveillance videotape of the robbery and identified Petitioner as one of the robbers; and (i) Asaro had emotional problems. Resp. Ex. D at 171-72.

Petitioner acknowledges the truth of the prosecutor's statement to the trial court that the court had instructed him to inform the defense if he found a "better" address for Asaro he should tell the defense and that on the day he found out that Asaro was in the City jail he informed the defense of this information. Doc. 2 at 6(m). Also, the records before this court show that on April 2, 2001, the day prior to the commencement of Petitioner's trial, the court ordered the State to permit

Petitioner's counsel to view Asaro's videotaped statement over the lunch hour. Resp. Ex. A at 8. Indeed, Petitioner's counsel argued that a continuance should be granted so that the defense could explore evidence revealed during Asaro's deposition that Asaro had mental problems; counsel alleged that she had no access to Asaro and that the first time she knew that Asaro might have mental problems was during the deposition. Resp. Ex. A at 12-14. The State argued to the court that it had "no mention of any psychological treatment" of Asaro prior to her deposition; that there was no indication that she had any psychological problems at the time of Petitioner's confession to her; that since the deposition defense counsel had made no effort to contact Asaro concerning her medical records; that the State had no objection to Petitioner's obtaining her records; that Asaro said she was depressed mainly about the offense at issue and the fact that Petitioner had confessed to a murder to her; that the day, several weeks earlier, he found out that Asaro was in custody in the City jail he notified the defense counsel of this in writing; that defense counsel could have served Asaro while she was in the City jail but did not do so. Resp. Ex. A at 14-17.  After hearing argument by defense counsel and the prosecutor the court found that it did not appear that Asaro had a mental health problem which affected her competency at the time of the critical facts or times of her involvement - "namely, at the time any alleged statements were made to her by [Petitioner] or today's date, April 2nd, or this week when she would be testifying." Resp. Ex. A at 19.  The court denied Petitioner's motion for a continuance and further granted Petitioner's motion for disclosure of Asaro's medical records; the court held that it would conduct an in camera review of these records. Resp. Ex. A at 19-20.

       The Missouri Court of Appeals summarily denied Petitioner relief on the issue raised in Ground 5.  Williams, 135 S.W.3d at 504.  Upon addressing the issue of Petitioner's Ground 5 the

motion court held as follows:

> This Court also finds that [Petitioner's appellate counsel's] failure to include in his first point on appeal reasons (a) through (h) from the first numbered paragraph of the motion for a new trial, did not prejudice Movant because the decision to grant or deny a continuance is within the sound discretion of the trial court. State v. Chambers, 891 S.W. 2d 93 (M. Banc 1994), *citing* State v. Schall, 806 S.W. 2d 659,666 (Mo. Banc 1991). A very strong showing is required to prove abuse of that discretion; the party requesting the continuance must show prejudice. Id., *citing* State v. Nave, 694 S.W. 2d 729,735 (Mo. Banc 1985), *cert denied* 475 U.S. 1098. Inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare. Id. There is no reasonable probability that the outcome of Movant's appeal would have been different had [Petitioner's appellate counsel] included reasons (a) through (h) in his appellate brief..

Resp. Ex. J at 108.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 5. As set forth above, the Supreme Court established the standard for evaluation of a claim of ineffective assistance of counsel in Strickland. This application requires an examination of both the reasonableness of counsel's action as well as any prejudicial effect on the Petitioner. The State court applied this standard and determined that there was no prejudicial effect as the outcome of Petitioner's appeal would likely have been the same had the issue of Ground 5 been briefed on appeal. Furthermore, the State court also determined that the actions of counsel were reasonable. This court notes that Petitioner's direct appeal addressed five separate issues; the first point upon which Petitioner relied in his direct appeal was that the trial court abused its discretion in not granting a continuance and denying, in the alternative, a motion to exclude Asaro's testimony. Petitioner specifically alleged that due to the late disclosure of Asaro as a witness he was unable to timely depose her and that he was precluded from fully investigating her competency as a witness. Thus, arguably, Petitioner's appellate counsel did *generally* address items (a) through (h) as identified in

Petitioner's motion for new trial although these items were not identified individually.[7]  Moreover, as stated above on page 15, it is proper for appellate counsel to winnow issues on appeal. <u>Garrett</u>, 78 F.3d at 1306.

In examining the claim of failure to grant a continuance in light of the unavailability of a witness, federal law provides that a "[c]ontinuance is a matter falling within the ambit of the discretionary powers of a trail court." <u>United States v. Briddle</u>, 443 F.2d 443, 451 (8th Cir. 1971) (citing <u>Stamps v. United States</u>, 387 F.2d 993, 995 (8th Cir. 1967); <u>Ray v. United States</u>, 197 F.2d 268, 271 (8th Cir. 1952)).  In <u>Ray</u> the Eighth Circuit held that "[w]hether the time allowed counsel for a defendant for preparation for trial is sufficient will depend upon the nature of the charge, the issues presented, counsel's familiarity with the applicable law and the pertinent facts, and the availability of material witnesses." 197 F.2d at 271.  In <u>Stamps,</u> the court found that when the motivation for continuance was a need to examine a witness before testimony, no prejudice resulted when the witness testified and counsel had time to interview her. <u>Stamps</u>, 387 F.2d at 995-996.

In the matter under consideration the motion court considered that it was within the trial court's discretion wether to grant a continuance; that in order to show an abuse of discretion a strong showing is required;  that the party alleging an abuse of discretion must show prejudice; and that inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare.  This reasoning of the State court is not contrary to the above stated federal law and is a reasonable application of federal law. <u>See</u> <u>Briddle</u>, 443 F.2d at 451.

As stated above, the State court concluded that Petitioner was not prejudiced by his appellate

---

[7]     In Petitioner's first point on appeal he did address Laura Asaro's mental competency and her psychiatric records as addressed in item (i) of the motion for a new trial. Resp. Ex. F at 35-36.

counsel's failure to raise on appeal that the trial court should have either granted a continuance or excluded the testimony of Asaro. As such, in this respect the decision of the motion court was not contrary to federal law and was a reasonable application of federal law. See Strickland, 466 U.S. at 694; Stamps, 387 F.2d at 995-996. Additionally, the State court reasonably applied federal law to the facts of Petitioner's case. The court finds that Petitioner's Ground 5 is without merit and that it should be dismissed.

**Ground 6-Petitioner received ineffective assistance of counsel because his trial counsel did not locate, subpoena and depose Laura Asaro "before catching her with the prosecution" two days before trial:**

Petitioner alleges in Ground 6 of his claim that he was denied effective assistance of trial counsel because of his trial counsel lack of diligence in locating, subpoenaing and deposing Asaro earlier than two days before the trial. Doc. 2 at 6(m)-(n). Petitioner contends that there is a reasonable probability that had his counsel found Asaro earlier and investigated items "(a) through (i)" of his motion for a new trial the outcome of his trial would have been different. Doc. 2 at 6(n).

As stated above in regard to Ground 5, the prosecutor informed Petitioner's counsel that Asaro was in the City jail the same day that he learned of her whereabouts. In addition to the background stated above in regard to Petitioner's Ground 5 the court notes that upon arguing for a continuance Petitioner's trial counsel stated that as of March 9, 2001, her "investigator was actively trying to contact [Asaro] at the address which was given by the prosecutor, only to have the person there say she didn't know whether she livered there." Counsel further stated that she "brought the issue up on March 9th indicating that we wanted her produced for the deposition." Resp. Ex. A at 13. Trial counsel further stated that on February 25, 2001, when she saw Asaro being led out of the courthouse she served Asaro with a notice of deposition. Resp. Ex. A at 12.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Missouri Court of Appeals summarily denied Petitioner relief on the issue raised in Ground 6. Williams, 135 S.W.3d at 504. Upon denying the Petitioner's Rule 29.15 motion the motion court stated in regard to Ground 6 as follows:

> Trial counsel was able to locate, serve, and depose Laura Asaro prior to trial. Movant claims that [trial counsel] may have been able to locate witnesses that might have impeached the testimony of Laura Asaro. To establish claims of ineffective assistance of counsel for failing to call witnesses, a movant must prove that the testimony of the absent witnesses would have proved a viable defense. State v. Doyle, 953 S.W. 2d 73, (S.D. 1997), citing State v. Vinson, 800 S.W. 2d 444, 448-49 (Mo. Banc. 1990) (quoting Hogshooter v. State, 681 S.W. 2d 20,21 (Mo.App. 1984)). "Witnesses who merely impeach the State's witnesses do not provide movant with a defense to a charged crime." Mills, 872 S.W. 2d at 881 (quoting Webster v. State, 837 S.W. 2d 585, 588 (Mo. App. 1992)). There is no reasonable probability that the outcome of the trial would have been different had the deposition of Laura Asaro been completed at an earlier date.

Resp. Ex. J at 108-109.

In accordance with Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 6. As set forth above, the Supreme Court established the standard of review for claims of ineffective assistance of counsel in Strickland. The state court correctly applied the two pronged test outlined in Strickland as it first considered that Petitioner's counsel did locate, serve, and depose Asaro prior to trial and as it concluded that Petitioner was not prejudiced by his counsel's actions in regard to contacting Laura Asaro.

In regards to the failure to locate, subpoena and depose a witness the Eighth Circuit has stated, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Haines v. Dormire, 240 F.3d 694,698 (8th Cir. 2001) (citations omitted). Furthermore, that even if potential witnesses may prove helpful in collateral matters of the trial, counsel is still allotted a wide amount of choice in determining the best

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

strategy for trial.  Id.

In the matter under consideration Petitioner's counsel did depose Laura Asaro prior to trial and she did testify.  Although Petitioner makes a general allegation that he was prejudiced by counsel's failure to contact Asaro earlier, Petitioner has not demonstrated that the outcome of the trial would have been effected had Asaro been contacted or deposed earlier.  Significantly, in response to the defense's claim that Asaro's medical history was unknown prior to her deposition the trial court ordered the State to produce Asaro's medical records. Thus, the court finds that the State court's decision denying Petitioner's claim that he was denied effective assistance due to the failure of trial counsel to locate, subpoena and depose Laura Asaro prior to two days before trial is not contrary to federal law and that it is a reasonable application of federal law.  Moreover, the State court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 6 is without merit and that it should be dismissed.

**Ground 7-Petitioner received ineffective assistance of counsel because trial counsel failed to object to references to Laura Asaro during the prosecutor's closing argument although the prosecutor obtained a motion in limine regarding Laura Asaro's testimony:**

Petitioner alleges that he was denied effective assistance of counsel because trial counsel should have contemporaneously objected to the closing argument of the prosecutor which argument addressed the testimony of Asaro.  Doc. 2 at 6(q)-(r).  In support of Ground 7 Petitioner argues that the prosecutor mislead the jury "into thinking a person [the prosecutor] knew to be a crack-whore, an unfit mother, and one of his key witnesses who was seeking a monetary reward for testimony against [P]etitioner in a pending death penalty case, was entitled to have what she credited on par with the testimony of an ordinary citizen."  Doc. 2 at 6(q).  Petitioner contends that the prosecutor was aware of Asaro's questionable character and that, therefore, his closing argument mislead the

38

jury.

The Missouri appellate court summarily denied Petitioner relief on the issue raised in Ground 7. Williams, 135 S.W.3d at 504. Upon addressing the issue raised in Petitioner's Ground 7 the motion court held as follows:

> Failing to raise a contemporaneous objection to the fact that the prosecutor first obtained an order limiting the cross examination of Ms. Asaro, and then commenting that the defense did not adduce any evidence attacking Ms. Asaro's credibility in his closing argument, did not prejudice the Movant in that there is no reasonable probability that the outcome of Movant's trial or appeal would have been different had this objection been made.

Resp. Ex. J at 110.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 7. The court has quoted above upon addressing Petitioner's Ground 4 that portion of the prosecutor's argument which Petitioner alleges is objectionable. First, the courts notes, as set forth in regard to Petitioner's Ground 4, that the issue of Petitioner's Ground 7 is without factual basis as Petitioner's counsel objected when the prosecutor referenced Laura Asaro's testimony and argued that other evidence corroborated her testimony. Second, this court notes that the prosecutor's closing argument correctly reflected the testimony of Laura Asaro and he did not address matters precluded by the motion in limine in his closing argument. Moreover, as stated above, it was Petitioner's counsel who introduced evidence in contravention of the motion in limine. Additionally, this court found above in regard to Petitioner's Ground 4 that the motion in limine did not violate Petitioner's constitutional rights. Thus, it cannot be said that the prosecutor's argument was so "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Culkin, 45 F.3d at 1235. Nor can it be said that the prosecutor's comments were so fundamentally unfair as to deny Petitioner due process. Donnelly, 416 U.S. at 645. Additionally, because the prosecutor

39

referenced testimony properly presented to the jury Petitioner can not establish that but for the allegedly objectionable argument his trial would have resulted in a different outcome. <u>Crespo</u>, 818 F. 2dat 687.

As stated above, in <u>Strickland</u> the Supreme Court set forth a two pronged test for a determination as to wether a criminal defendant received effective assistance of counsel. Additionally, upon addressing the issue of whether a trial attorney's failure to object to allegedly objectionable argument by the prosecutor, the Eight Circuit has held that <u>Strickland</u> requires that the habeas petitioner show that the verdict would have been different if the prosecutor had not engaged in the behavior. The habeas petitioner must demonstrate that "but for" counsel's professional errors, the result would have been different. <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999) (holding that where the court has found that the verdict would not have been different even if the prosecutor had not engaged allegedly improper argument, a habeas petitioner cannot demonstrate that if counsel had objected to this allegedly improper argument the result would have been different; under such circumstances a petitioner fails "to demonstrate that 'but for' counsel's professional errors, the result would have been different").

Upon considering the issue of Petitioner's Ground 7 the State court concluded that the outcome of Petitioner's trial would not likely have been different if counsel had objected to the State's closing argument. As such, the State court's decision in regard to the issue raised in Petitioner's Ground 7 is not contrary to federal law and is a reasonable application of federal law. <u>See Donnelly</u>, 416 U.S. at 645; <u>Strickland</u>, 466 U.S. at 688; <u>Kellogg</u>, 176 F.3d at 452. The court finds, therefore, that Petitioner's Ground 7 is without merit and that it should be dismissed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**Ground 8-Petitioner received ineffective counsel because the trial counsel failed to call Cynthia Asaro, who is Laura Asaro's mother, and Laura Asaro's children as witnesses.**

Petitioner alleges that if Laura Asaro's children had been called to testify they would have contradicted the testimony of Laura Asaro that Petitioner provided the children with coins. Doc. 2 at 6(t). Petitioner also argues that Cynthia Asaro had custody of her grandchildren; that her grandchildren lived with her; that she would have testified that she was in a position to have observed or otherwise learned about monetary gifts given to her grandchildren; and that she would have testified that Petitioner did not give any money in the form of coins to her grandchildren. Petitioner argues that in the course of Laura Asaro's deposition his counsel became aware of the possibility of calling Cynthia Asaro and Laura Asaro's children as witnesses to impeach Laura Asaro's testimony that Petitioner gave the children coins. Doc. 2 at 6(t)-(u). Petitioner contends that without the testimony regarding the large amount of coins, there would have been no connection between Petitioner and the robbery. Doc. 11 at 20.

The Missouri Appellate Court summarily denied Petitioner relief on the issue raised in Ground 8. Williams, 135 S.W.3d at 504. Upon addressing the issue raised in Petitioner's Ground 8 the motion court held as follows:

> [Petitioner's trial counsel's] failure to call Cynthia Asaro as a witness did not prejudice the defendant in that Cynthia Asaro's testimony would not have provided the Movant with a viable defense. To establish claims of ineffective assistance of counsel for failing to call a witness, a movant has to prove that the testimony of the absent witnesses would have provided a viable defense. State v. Doyle, 953 S.W. 2d 73 (S.D. 1997), *citing* State v. Vinson, 800 S.W. 2d 20, 21 (Mo. App. 1984)). "Witnesses who merely impeach the State's witnesses do not provide movant with a defense to a charged crime." Mills 872 S.W. 2d at 881(quoting Webster v. State, 837 S.W. 2d 585, 588 (Mo.App. 1992)). ...

> [Petitioner's trial counsel's] failure to call the unnamed children of Laura Asaro did not prejudice the Movant in that their testimony would not have provided the Movant with a viable defense. To establish claims of ineffective assistance of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

counsel for failing to call witnesses, a movant has to prove that the testimony of the absent witnesses would have provided a viable defense. State v. Doyle, 953 S.W. 2d 73 (S.D. 1997), *citing* State v. Vinson, 800 S.W. 2d 444,448-49 (Mo.Banc 1990) (quoting Hogshooter v. State, 681 S.W. 2d 20,21 (Mo. App. 1984)). "Witnesses who merely impeach the State's witnesses do not provide movant with a defense to a charged crime." Mills, 872 S.W. 2d at 881 (quoting Webster v. State, 837 S.W. 2d 585, 588 (Mo. App. 1992)). There is no reasonable probability that the outcome of the trial would have been different had Ms. Haines identified, located and called these witnesses at trial.

Resp. Ex. J at 114-15.

Pursuant to Williams the court will consider federal law applicable to the issue raised in Petitioner's Ground 8. As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses, cross examine witnesses, or introduce evidence may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Id. at 1556 (citation omitted).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As further set forth above Strickland requires that to establish ineffective assistance of counsel a habeas petitioner must show that counsel's performance was both unreasonable and that it prejudiced the petitioner. The motion court noted that even if Laura Asaro's mother and children had been called and had contradicted Laura Asaro's testimony such impeachment would not have provided Petitioner with a defense to the crimes for which he was convicted. The court concluded, therefore, that the Petitioner was not prejudiced as the outcome of his trial would not have been different had these individuals been called as witnesses. The court finds, therefore, that the State court's decision denying the Petitioner's's claim that he was denied effective assistance of counsel because his counsel failed to present the testimony of Laura Asaro's mother and children is not contrary to federal law and that it is a reasonable application of federal law. Moreover, the State court reasonably applied federal law to the facts of Petitioner's case. The court finds that Petitioner's Ground 8 is without merit and that it should be dismissed.

**Ground 9-Petitioner contends that direct appeal counsel was ineffective for failing to argue on appeal that the trial court erred in denying the Petitioner's motion in limine precluding evidence from Reebok in the form of business records.**

Petitioner alleges in Ground 9 that he was denied effective assistance of direct appeal counsel because direct appeal counsel failed to assert on appeal that the trial court erred in failing to preclude the introduction of business records from Reebok which records "purport[ed] to minimize the number of shirts like the one Laura Asaro testified was [P]etitioner's." Doc. 2 at 6(v). Petitioner further argues that these records were "generated ad hoc at the behest of the local prosecutors" and that they did not come within the statutory or decisional definition of business records. Petitioner further states in support of Ground 9 that the prosecutor tendered a document purporting to show that the manufacturer of the shirt had only distributed one of a given kind of shirt in Missouri at the time of

the robbery (TT:247-48), and argued that the fact that this shirt was 'very unique' made it more likely that it was the [P]etitioner who was at the scene of the Burger King robbery." Doc. 2 at 6(v).

Petitioner's trial counsel objected to the introduction by the State of an affidavit accompanied by three pages of records from Reebok International, Ltd. The court received the affidavit and records pursuant to the Uniform Business Records Act. Resp. Ex. A at 247. The records stated that one "long sleeve hooded tee" was shipped to SportsWorld in Missouri. Resp. Ex. A at 248. The records also included a picture of the "long sleeve hooded tee" which Bradley Clark identified as the striped shirt worn by the man with the gun during the Burger King robbery. Resp. Ex. A at 253.

The Missouri Appellate Court summarily denied Petitioner relief on the issue raised in Ground 9. Williams, 135 S.W. 3d at 504. The motion court denied Petitioner's Rule 29.15 motion on the issue raised in Ground 9 as follows:

> [Petitioner's appellate counsel] failure to raise on appeal the point that the trial court erred in admitting into evidence business records from Reebok did not prejudice the Movant. The records were properly admitted as business records. There is no reasonable probability that the outcome of Movant's appeal would have been different had this issue been raised on appeal.

Resp. Ex. J. at 114.

Pursuant to Williams the court will consider federal law applicable to the issue raised in Petitioner's Ground 9. Upon considering the issue of Petitioner's Ground 9, the motion court found that the failure to present on appeal the issue of whether the business records were properly admitted into evidence did not effect the outcome of the Petitioner's appeal. Additionally, the appellate court determined that the evidence was admissible as a business record. As such, the motion court's decision is not contrary to and is a reasonable application of the two pronged test of Strickland as discussed above.

44

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Moreover, under Missouri law business records are admissible pursuant to Mo. Rev. Stat. §490.680. As set forth above the exclusion or admission of evidence is primarily a question of State law; issues concerning the interpretation and application of state law are not cognizable in federal habeas review; and in order for such an issue to be cognizable in federal habeas proceedings the alleged error must have resulted in a trial which is so fundamentally unfair that it denied the petitioner of due process. See Estelle, 502 U.S. at 67-78; Evans, 371 F.3d at 443; Scott, 915 F.2d at 1190. As such, the court finds that Petitioner does not assert a constitutional violation in regard to the admission of the records from Reebok but rather seeks the interpretation and application of Mo.Rev.Stat. §490.680. As such, the underlying alleged constitutional violation of Petitioner's Ground 9 is not cognizable under § 2254.

Additionally, under federal law business records are admissible pursuant to Federal Rules of Evidence, Rule 803(6), as an exception to the hearsay rule. Rule 803(6) permits the admission of business records that are kept in the regular course of business and are authenticated by a proper party. Fed. R. Evid. 803(6). The Eighth Circuit specifically has found that business records which demonstrate an accounting for inventory were properly admitted. United States v. Robertson, 588 F.2d. 575, 578 (8th Cir. 1978).

As such, the court finds, alternatively, that the State court's determination that the trial court's admission of the business records of Reebok was proper is not contrary to and is a reasonable application of federal law. See Robertson, 588 F.2d. 575. Additionally, the State court reasonably applied federal law to the facts of the Petitioner's case. The court finds therefore, that Petitioner's Ground 9 is without merit and that it should be dismissed.

## VI.
## CONCLUSION

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The court finds that Petitioner's Grounds 1 through 9 are without merit. The court finds, therefore, that Petitioner's §2254 Petitioner should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of constitutional right, Petitioner should not be granted a certificate of appealability in this matter. Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED;**

**IT IS FURTHER ORDERED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED;**

**IT IS FURTHER ORDERED** a separate judgment shall issue this same date incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this _4th_ day of November, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com